**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **PAUL WARNER POWELL,** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07cv59** |
| | ) | **Capital Post-Conviction Proceeding** |
| **LORETTA K. KELLY,** | ) | |
| **Warden, Sussex I State Prison,** | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

Petitioner Paul Warner Powell's petition for habeas corpus relief encompasses two capital murder trials on two different indictments. Powell was first convicted of capital murder in the Circuit Court for Prince William County in 2000, and was thereafter sentenced to death. The Supreme Court of Virginia vacated the conviction and remanded, limiting retrial on the specific charged offense to non-capital murder. Apparently flush with his success, Powell rashly wrote a letter to the Prince William County Commonwealth's Attorney, mocking the prosecution and describing additional facts about the crimes that were unknown to the Commonwealth during the first trial. Based on these new facts, the Commonwealth's Attorney elected to *nolle prosequi* the remanded charges and to seek instead a new indictment against Powell. Accordingly, Powell was tried on this new indictment and was again convicted and sentenced to death. This time, his direct appeal to the Supreme Court of Virginia failed. After unsuccessfully challenging the second conviction and sentence in collateral state proceedings, Powell filed a petition in this district seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Commonwealth responded by filing a motion to dismiss, which is now at issue, as it has been fully briefed and

argued.  For the reasons set forth here, the Commonwealth's motion to dismiss must be granted.

## I.

In his first trial, Powell was tried on the following charges: (i) the capital murder of Stacey Lynn Reed ("Stacey") in the commission of robbery and/or attempted robbery, in violation of Va. Code § 18.2-31(4); (ii) the capital murder of Stacey in the commission of, or subsequent to, the rape and/or attempted rape of Stacey's sister, Kristie Erin Reed ("Kristie"), in violation of Va. Code. § 18.2-31(5)[1]; (iii) the abduction, rape, and attempted capital murder of Kristie, in violation of Va. Code §§ 18.2-48, -61, -31(5), -26; (iv) grand larceny, in violation of Va. Code § 18.2-95; (v) robbery and attempted robbery, in violation of Va. Code § 18.2-58; and (vi) three counts of the use of a firearm, in violation of Va. Code § 18.2-53.1.  The jury convicted Powell of (i) the capital murder of Stacey subsequent to or in the commission of the rape of Kristie, (ii) the abduction, rape, and attempted capital murder of Kristie, and (iii) grand larceny, but acquitted him of the three remaining charges.  *See Powell v. Commonwealth,* 552 S.E.2d 344, 365 (Va. 2001); *see also Powell v. Commonwealth*, 590 S.E.2d 537, 543 (Va. 2004).  On direct appeal, the Supreme Court of Virginia described the facts relating to Powell's convictions, in this first trial, as follows:

> Powell was acquainted with Stacey Lynn Reed (Stacey) for two and a half years prior to the commission of the crimes in question. Kristie Erin Reed (Kristie), Stacey's younger sister, described her sister and Powell as "[f]riends." Powell, who was 20 years old at the time of the murder, had wanted to date

---

[1] The charge of the capital murder of Stacey during the commission of, or subsequent to, the rape or attempted rape of Kristie was not included in the original indictment, but the trial court allowed the Commonwealth to amend the indictment to add this charge.  The amended indictment did not name Kristie as the victim of rape or attempted rape, but the Commonwealth provided a bill of particulars at Powell's request that named Kristie as the sole victim of the alleged rape or attempted rape that accompanied the murder of Stacey.

Stacey, who was 16 years old, but recognized that she was underage and he "could go to jail for that."

Powell, a self-avowed "racist and white supremacist," was aware that Stacey, who was white, was dating Sean Wilkerson, who is black. Wilkerson had recently moved to another locality, but he and Stacey remained in contact. Stacey was a member of her high school's Junior Reserve Officer's Training Corps and planned to attend a military ball with Wilkerson.

Just before noon on January 29, 1999, Stacey arrived home from school early, having completed her examinations that were being given that day. Powell was waiting for her at her home when she arrived. When Powell learned that Robert Culver, a friend of the girls' mother, would be home shortly for lunch, Powell left and returned at about 12:45 p.m., after Culver had left. When Powell returned, he was armed with a "survival" knife, a "butterfly" knife, a box cutter, and a 9-millimeter pistol.

Stacey was talking to Wilkerson on the telephone. After Stacey ended the telephone conversation, Powell confronted her about her relationship with Wilkerson. He demanded that Stacey end her relationship with Wilkerson. According to Powell, he and Stacey argued, and the argument grew into a struggle. Powell drew the survival knife from his belt and Stacey "got stuck." Powell denied stabbing Stacey deliberately. The struggle continued briefly until Stacey collapsed on the floor in her sister's bedroom.

Although Powell did not know whether Stacey was still alive, he made no effort to determine her condition or call for medical assistance. Powell "wandered around the house, got some iced tea, had a cigarette." Kristie arrived home from school shortly after 3 p.m. and was met at the door of the home by Powell. Powell told her that Stacey was in her room, but moments later Kristie discovered her sister's body in Kristie's bedroom. She dropped her schoolbooks and began to cry.

Powell ordered Kristie to go to the basement. Kristie, who knew that Powell was usually armed, complied because she "didn't want to die." In the basement, Powell ordered Kristie to remove her clothes and to lie on the floor. Powell then raped Kristie, and she "begg[ed] him not to kill her." Powell later admitted that he knew that Kristie, who was 14 years old at the time of the rape, had been a virgin.

While Powell and Kristie were in the basement, Mark Lewis, a friend of Kristie, came to the house and knocked on the door. When Powell heard the knock, he tied Kristie's legs together and tied her hands behind her back with shoelaces he cut from her athletic shoes. Powell then dressed and went upstairs.

While Powell was upstairs, Kristie managed to loosen the bonds on her hands and attempted to "scoot across the floor to hide" under the basement steps. Hearing Powell coming back to the basement, she returned to the position on the floor where he had left her. Powell then strangled Kristie with a shoelace and she lost consciousness. While she was unconscious, Powell stabbed Kristie in the abdomen and slit her wrists and throat.

Powell returned upstairs, searching for "anything worth taking." He fixed another glass of iced tea, which he took with him when he left the home a short time later. Powell went to a friend's house and then drove with the friend to the District of Columbia to buy crack cocaine.

Kristie regained consciousness sometime after Powell had left her home. About 4:10 p.m., she heard Culver return home, and she called out his name. Culver discovered Kristie in the basement, called the 911 emergency response telephone number, and began rendering first aid to her. He later discovered Stacey's body upstairs. Shortly thereafter, paramedics arrived. In response to a question from one of them, Kristie identified Powell as her attacker. Powell was arrested later that day at the home of his friend's girlfriend, where he and the friend had gone after buying drugs.

Kristie was transported by helicopter to Inova Fairfax Hospital where she received treatment for her injuries. It was ultimately determined that the wounds to her throat and abdomen each came within one centimeter of severing a major artery which likely would have caused her death.

An autopsy revealed that Stacey had died from a knife wound to the heart. The medical examiner testified that there was a single entrance wound and two exit wounds indicating that the knife had been withdrawn, at least partially, and then reinserted into the heart. One wound path pierced the left ventricle and the other went through both the left and right ventricles, exiting the heart at the back of the right ventricle.

Stacey's body also exhibited a number of bruises on the head, chest, abdomen, back, arms, and legs, abrasions on the face, a stab wound to the back, and a cut and scrapes on the left forearm. The autopsy further revealed that Stacey had been struck on the head with sufficient force to cause bleeding inside her scalp and in the membranes surrounding her brain prior to death. These injuries were not consistent with Stacey merely having fallen during a struggle.

The DNA profile obtained from the blood found on Powell's survival knife was consistent with the DNA profile of Stacey's blood. The DNA profile obtained from sperm fractions from swabs taken from Kristie's vagina and perianal area was the same profile as that obtained from Powell's drawn blood sample.

While in jail, Powell wrote letters to friends in which he admitted having committed the murder, rape, and attempted murder because of Stacey's relationship with a black man. He further claimed that he had planned to kill Stacey's family and steal the family's truck. Powell also wrote to a female friend and asked her to "get one of [her] guy friends ... to go to a pay phone and call Kristie and tell her [that] she better tell the cops she lied to them and tell her [that] she better not testify against me or she's gonna die."

Powell told another inmate that he had become angry with Stacey when she refused to have sex with him after talking to Wilkerson. Powell told the inmate that he stabbed Stacey twice and that when he attempted to cut Kristie's throat, his knife was too dull, "[s]o he started stepping on her throat trying to

stomp her throat." To another inmate, Powell described Stacey's killing as a
"human sacrifice" and expressed satisfaction in having raped a virgin.

*Powell*, 552 S.E.2d at 347-48.

Following this recitation of the facts, the Supreme Court of Virginia proceeded to affirm
Powell's convictions for the abduction, rape, and attempted capital murder of Kristie, and for
grand larceny. *Powell,* 552 S.E.2d at 365.  The court then went on to reverse Powell's conviction
for the capital murder of Stacey in the commission of, or subsequent to, the rape or attempted
rape of Kristie, finding, *inter alia*, that the original indictment had been improperly amended to
include a charge of capital murder of Stacey "during the commission of or subsequent to rape
and/or attempted rape." *Id.* at 357.  The court also found the evidence insufficient to support a
conviction for the capital murder of Stacey during the commission of, or subsequent to, the rape
of Kristie, because all of the evidence adduced at trial showed that Kristie was raped *after*
Stacey's murder. *Id.* at 363.  Accordingly, the Supreme Court of Virginia remanded the case
with instructions that Powell could not be convicted of more than first degree murder on retrial.

While awaiting retrial, Powell, believing he could no longer be tried for capital murder,
brashly wrote a letter to the Commonwealth's Attorney who had prosecuted him, taunting the
Commonwealth's Attorney and admitting not only to the murder of Stacey, but also revealing
that he had attempted to rape Stacey before killing her.  This latter admission was new, not
previously known to the Commonwealth's Attorney.  Armed with this and the other admissions
in the letter, the Commonwealth's Attorney *nolle prossed* the indictment in the remanded case
and obtained a new indictment against Powell, charging him this time with the capital murder of
Stacey "during the commission of or subsequent to the attempted rape of Stacey Lynn Reed."

*See Powell*, 590 S.E.2d at 544.  Predictably, a centerpiece of the Commonwealth's evidence in

this second trial was Powell's letter to the Commonwealth's Attorney.  The Supreme Court of

Virginia's description of this evidence is helpful.

> Powell stated in the letter that, because he believed he could not be retried for
> capital murder, "I figured I would tell you the rest of what happened on Jan. 29,
> 1999, to show you how stupid all y'all . . . are." Admitting that he "planned to kill
> the whole family" on that day, Powell further stated that "I had other plans for
> [Stacey] before she died." Powell described how he had attempted to initiate
> consensual sexual intercourse with Stacey, which he had previously admitted.
> Powell then revealed that when Stacey resisted his advances, he pushed her onto
> her bed and, while sitting on top of her, told Stacey "that we could do it the easy
> way or the hard way."
> Powell then described how Stacey had "started fighting with me and
> clawed me [sic] face." Powell stated that he "slammed her to the floor ... sat on
> top of her and pinned her hands down again." Powell claimed that Stacey relented
> "and I told her if she tried fighting with me again I would kill her."
> Continuing, Powell stated that, at his direction, Stacey began to disrobe,
> but stopped when the telephone rang. Stacey put her clothes back on so that she
> could answer the telephone. Powell refused to allow Stacey to answer the
> telephone and ordered her to resume disrobing. When she refused, Powell
> "pushed her back and pulled out [his] knife." When Stacey attempted to leave the
> bedroom, Powell stabbed her. Stacey fell back and Powell removed the knife.
> Stacey then stumbled to another bedroom and collapsed. Powell "saw that she was
> still breathing" and "started stomping on her throat" until he "didn't see her
> breathing anymore."

*Id.* at 544.[2]  Based on this and other evidence presented at the second trial, the jury convicted

Powell of the capital murder of Stacey in the commission of, or subsequent to, the attempted rape

---

[2] Further demonstrating his callousness and penchant for confessional letter-writing,
Powell also sent a letter to Lorraine Reed, Stacey's mother, enclosing a photograph of a partially
nude woman who resembled Stacey and stating, in part:

> I found this picture in a magazine and it kinda looks like someone I know or used
> to know, but I can't think of the person's name.  I think you know the person too,
> so I was wondering if you could tell me the name of the person this picture
> resembles so I can quit racking my brain trying to think of it?

*See Powell v. Warden of Sussex I State Prison*, 634 S.E.2d 289, 293 (Va. 2006).

of Stacey and then unanimously sentenced him to death, finding both vileness and future

dangerousness as aggravating factors.  *Id.* at 548-49.

Powell again appealed his conviction to the Supreme Court of Virginia, claiming, *inter*

*alia*, (i) that the trial court should have dismissed the second indictment based on the following

grounds: (a) the reversal of the first conviction, (b) the "law of the case" doctrine, and (c) the

Double Jeopardy Clause; (ii) that testimony about Powell's attack on Kristie should have been

excluded during the guilt determination phase as irrelevant and prejudicial; (iii) that Powell's

statements to police violated his Sixth Amendment rights and should have been excluded; and

(iv) that the trial court erred in limiting Powell's voir dire and failing to strike the venire panel

after Powell's attorney informed them that Powell had been previously convicted of capital

murder.   The Supreme Court of Virginia rejected all of these challenges and affirmed Powell's

conviction.  *Id.* at 563.  The U.S. Supreme Court denied certiorari.  *Powell v. Virginia*, 543 U.S.

892 (2004).

Powell then challenged his conviction in collateral state proceedings, raising numerous

claims, many of which reiterated claims already rejected by the Supreme Court of Virginia on

direct appeal.  *See Powell v. Warden of Sussex I State Prison*, No. 042716, 2005 WL 2980756, at

*2 (Va. Nov. 8, 2005).  Additionally, however, Powell also set forth several new claims.  In

relevant part, the new claims included: (i) challenges to the use of vileness and future

dangerousness as aggravating factors during the sentencing phase, (ii) objections to the

admission of a report containing false information about Powell's criminal history during the

sentencing phase; (iii) a contention that Powell's statements to police after writing his letter to

the Commonwealth's Attorney confessing to the attempted rape of Stacey were involuntary; (iv)

a claim that Powell was administered an unusual combination of medications and was forced to wear a stun belt during his trial, both of which impaired his right to participate meaningfully in his trial; (v) a claim that trial counsel provided him ineffective assistance by failing to investigate and present a compelling mitigating case and failing to rebut the Commonwealth's aggravating evidence; and (vi) a contention that Virginia's post-conviction procedures are constitutionally inadequate.  *Id.* at *2-*24.  The Supreme Court of Virginia denied relief on all grounds, but later granted rehearing on the question whether counsel was ineffective in the sentencing phase for failing to object to the introduction of the report containing false evidence of Powell's criminal history.  Ultimately, the court, by a 4 to 3 vote, rejected this claim and denied Powell's petition for a new sentencing hearing.  *Powell v. Warden of Sussex I State Prison*, 634 S.E.2d 289 (Va. 2006).

Powell then filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254,[3] in which he asserts nine main claims for relief:

1.  that Powell's second capital murder trial violated the Double Jeopardy Clause;

2.  that the trial court erred by limiting the scope of voir dire and by denying Powell's motion to strike the first venire panel for cause;

3.  that the trial court erred by refusing to exclude or limit evidence of Powell's crimes against Kristie during the guilt phase of the trial;

4.  that the Commonwealth violated Powell's constitutional rights by interrogating him and introducing his statements against him at trial;

5.  that trial counsel rendered ineffective assistance by failing to investigate all reasonably available mitigating evidence;

---

[3] Before filing this petition, Powell moved for the appointment of a "mitigation specialist," which this Court denied.  *Powell v. Kelly*, No. 1:07cv57, 2007 WL 1856019, at *1 (E.D. Va. June 25, 2007) (Order).

6.       that the security conditions imposed on Powell during trial unconstitutionally impeded his ability to participate meaningfully in his trial;

7.       that the Commonwealth impermissibly introduced false evidence of Powell's criminal history;

8.       that the jury unconstitutionally considered Virginia's vileness and future dangerousness aggravating factors in the sentencing phase; and

9.       that Virginia's post-conviction review process is constitutionally infirm.

All of Powell's nine claims for relief have been exhausted as required by § 2254(b)(1), either because Powell actually raised each of them below, or because state avenues for relief are now closed to him.  *See* Va. Code § 8.01-654.1.[4]

## II.

The federal habeas statute, bearing the eye-catching name the Antiterrorism and Effective Death Penalty Act (AEDPA),[5] sharply limits federal review of a petition for habeas corpus relief from a state conviction and sentence.  It does so by dictating "a highly deferential standard for evaluating state-court rulings."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal quotation marks and citations omitted).  Specifically, this deferential standard allows federal habeas relief only

---

[4] Claims not presented to the state court on appeal or during state habeas proceedings are nonetheless exhausted under the meaning of § 2254(b)(1) if "a state procedural rule would bar consideration if the claim was later presented to the state court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Here, any of Powell's future claims in state court would be barred under Va. Code. § 8.01-654.1 (limiting state habeas review to petitions "filed within sixty days after . . . denial by the United States Supreme Court of a petition for a writ of certiorari to the judgment of the Supreme Court of Virginia on direct appeal") or § 8.01-654(B)(2) (stating that no "writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition").  *See Cardwell v. Netherland*, 971 F. Supp. 997, 1013 n.22 (E.D. Va. 1997); *see also Bassette v. Thompson*, 915 F.2d 932, 936-37 (4th Cir. 1990) (analyzing a different Virginia procedural statute, Va. Code § 8.01-654(B)(2), before the enactment of AEDPA).

[5] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

where one or both of the following conditions are met.  First, federal habeas relief is proper if the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  It is now established that a state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or on facts "indistinguishable" from a Supreme Court decision, reaches a result different from the Supreme Court precedent.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Lenz v. Washington*, 444 F.3d 295, 299-300 (4th Cir. 2006); *Lovitt v. True*, 403 F.3d 171, 178 (4th Cir. 2005).  Also now settled is that a state court's decision involves an "unreasonable application" of federal law when that court identifies the proper governing federal rule from Supreme Court precedent, but then "unreasonably applies" that rule to a petitioner's case.  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005); *see also Booth-El v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

The second circumstance warranting federal habeas relief occurs where the state court's merits decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  And importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the habeas petitioner proves otherwise "by clear and convincing evidence."  *Id.* § 2254(e)(1).  This standard is plainly "demanding," but it is "not insatiable," as "[d]eference does not by definition preclude relief."  *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing *Miller-El v. Cockrel*, 537 U.S. 322, 340 (2003)).

These established principles are the lens through which Powell's § 2254 claims must be

reviewed.

## III.

Powell's central habeas claim is that the second trial violated his rights under the Double

Jeopardy Clause.[6]  He advances two principal arguments in support of this claim.  First, he argues

that the Double Jeopardy Clause was violated because the Commonwealth tried him twice under

the same statute for the capital murder of Stacey and simply changed the identity of the victim of

the rape or attempted rape in his second trial.[7]  Alternatively, he argues that even if it was

permissible to charge him with two separate counts of the capital murder of Stacey — one based

on the attempted rape of Stacey and one based on the rape of Kristie — the Commonwealth

actually tried him in both trials for the capital murder of Stacey during the commission of, or

subsequent to, his rape or attempted rape of *Stacey*.  The Supreme Court of Virginia rejected both

arguments on direct appeal, for reasons that bear recounting, as these reasons must be the focus

of the AEDPA review here.

The Supreme Court of Virginia disposed of Powell's first double jeopardy argument by

ruling, in accord with its established precedent, that the General Assembly of Virginia plainly

intended that a defendant may be prosecuted for multiple violations of the Virginia capital

---

[6] The Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  It protects a defendant from being prosecuted a second time for the same offense after being acquitted of that offense; it also protects against multiple punishments for the same offense.  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

[7] Under the Virginia capital murder statute, rape or attempted rape is considered a "gradation crime" — one that, when added to first degree murder, elevates the crime to capital murder.  Thus, the "gradation crime victim" of Va. Code § 18.2-31(5) is the victim of the alleged rape or attempted rape, who may or may not be the murder victim.

murder statute, where, as here, there is a single murder victim but different gradation crime victims. *See Powell*, 590 S.E.2d at 553 (citing *Payne v. Commonwealth*, 509 S.E.2d 250, 301 (Va. 1999)).  Thus, the Supreme Court of Virginia found that the capital murder of Stacey subsequent to Powell's attempted rape of Stacey was a distinct and separate crime from the capital murder of Stacey during the commission of, or subsequent to, Powell's rape of Kristie. The Supreme Court of Virginia then rejected Powell's second double jeopardy argument, relying on settled state precedent to rule that Stacey's attempted rape was not at issue in the first trial because the Commonwealth's bill of particulars limited that trial solely to the capital murder of Stacey subsequent to, or in the commission of, the rape of Kristie. *See Powell*, 590 S.E.2d at 552.  The question presented, then, is whether the Supreme Court of Virginia's rejection of Powell's double jeopardy claim passes muster under AEDPA.

Analysis of Powell's first double jeopardy argument properly begins with identifying *Sanabria v. United States*, 437 U.S. 54, 70 (1978) as the controlling "clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).  There, the Supreme Court held that where a defendant is charged with several violations of the same criminal statute, the double jeopardy inquiry is whether the legislature responsible for passage of the statute intended the charged violations to be "allowable unit[s] of prosecution" separately chargeable under the statute. *Sanabria*, 437 U.S. at 70.  In other words, *Sanabria* stands for the proposition that where multiple violations of the same statute are charged, the question whether the violations are separate crimes for double jeopardy purposes requires ascertaining whether the

legislature intended the violations to be separate crimes under the statute.  *Id.*[8]

Applied here, *Sanabria* teaches that the pertinent double jeopardy question is whether the General Assembly of Virginia, in enacting Va. Code § 18.2-31(5), intended that murders with different gradation crime victims constitute separate and distinct crimes so that Powell's murder of Stacey subsequent to Powell's attempted rape of Stacey constituted a separate and distinct crime for double jeopardy purposes from Powell's murder of Stacey subsequent to Powell's rape of Kristie.  The Supreme Court of Virginia, without citing *Sanabria*,[9] but engaging in the precise analysis required by that case, clearly answered this question in the affirmative: Consistent with the General Assembly's intent, Powell's two trials for capital murder were for separate and distinct crimes because different gradation crime victims were involved in each trial.  It follows, therefore, that Powell's first argument fails, as it clearly appears that the Supreme Court of Virginia followed the appropriate Supreme Court precedent.

Nor is there any doubt that the Supreme Court of Virginia reasonably applied *Sanabria*.

---

[8] *Sanabria* followed previous Supreme Court precedent holding that when a defendant is charged with two violations of the same statute, the question is whether the legislature authorized two separately chargeable offenses or only one.  *See Bell v. United States*, 349 U.S. 81, 82-83 (1955) (holding that absent clear Congressional intent, a defendant charged with transporting two women in interstate commerce at the same time could be charged with only one violation of the Mann Act, which criminalized transporting any woman in interstate commerce "for the purpose of prostitution or debauchery, or for any other immoral purpose") (quoting ch. 395, § 2, 36 Stat. 825, 825 (1910)).  The primacy of legislative intent in this analysis is a reflection of the principle that "the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors" and that "[t]he legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

[9] *See Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that to pass muster under the "contrary to" prong, a state court need not cite relevant Supreme Court precedent or even be aware of relevant cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them").

The Supreme Court of Virginia's legislative intent analysis was clear and explicit, covering both the language of Va. Code § 18.2-31(5) and the Supreme Court of Virginia's precedent construing this statute.  Thus, the Supreme Court of Virginia noted that a defendant may be charged separately with both capital murder in the commission of robbery, Va. Code § 18.2-31(4), and with capital murder in the commission of rape, Va. Code § 18.2-31(5).  *Powell*, 590 S.E.2d at 553 (citing *Payne*, 509 S.E.2d at 301).  Next, the Supreme Court of Virginia noted that under its precedent, a defendant can be convicted of two charges of capital murder based on both attempted rape and object sexual penetration of the same victim, both defined as crimes under Va. Code § 18.2-31(5).  *Id.* Given this, the Supreme Court of Virginia concluded that the Virginia General Assembly intended for a defendant to be chargeable with two counts of capital murder of the same victim under § 18.2-31(5) where, as here, there are different victims of "rape or attempted rape."  *Powell*, 590 S.E.2d at 554.  The Supreme Court of Virginia agreed with Powell that an indictment charging a single violation of § 18.2-31(5) without naming the victim of the rape or attempted rape would preclude future charges of capital murder of the same victim under that provision.  The Supreme Court of Virginia then held that where the Commonwealth specifies the victim of the gradation offense, either in the indictment or in a bill of particulars submitted before jeopardy attaches, the crime becomes a "separate crime" for double jeopardy purposes.  *Id.*[10]

Thus, by carefully analyzing its precedent regarding the General Assembly's intended

---

[10] *Cf. Martin v. Commonwealth*, 406 S.E.2d 15, 18 (Va. 1991) (noting that "jeopardy attaches only after a jury is empaneled and sworn"); *Wade v. Commonwealth*, 388 S.E.2d 277, 279 (Va. Ct. App. 1990) (stating that the "purpose of a bill of particulars is to clarify the basis upon which a charge is brought . . . to enable [a defendant] to plead his acquittal or conviction in bar of any subsequent prosecution for the same offense").

scope of the capital murder statute, the Supreme Court of Virginia applied the correct U.S.

Supreme Court precedent.  And importantly, there can be no second-guessing of the Supreme

Court of Virginia's conclusion, as it is settled that "a state court's interpretation of state law,

including one announced on direct appeal of the challenged conviction, binds a federal court

sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) (citing

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).  Hence, under Virginia law, Powell was properly

charged and tried on two separate counts of the capital murder of Stacey, one subsequent to his

attempted rape of Stacey and one during the commission of, or subsequent to, his rape of

Kristie.[11]

Yet, this does not end the double jeopardy analysis, for Powell also argues that even if the

General Assembly of Virginia intended the two crimes to be distinct, he was actually charged in

both trials with the same crime, namely the capital murder of Stacey in the commission of, or

subsequent to, his attempted rape of Stacey.  The Supreme Court of Virginia rejected this

---

[11] Indeed, Powell's counsel conceded these were two separate crimes during oral argument:

> THE COURT:  . . . [I]f there hadn't been a bill of particulars, would it have been permissible for the Commonwealth to have said in its indictment: There are two crimes here.  One is killing Stacy [sic] while trying to rape - - attempting to rape Stacy [sic], and number two, killing Stacy [sic] while attempting to rape Christie [sic].  Two different crimes."

> ATTORNEY SHELDON: Your Honor, I think under Virginia - -

> THE COURT: He could have been indicted for both, couldn't he?

> ATTORNEY SHELDON: Yes, he could have.

Tr. at 6.  Powell's counsel later sought to retract this concession in a subsequently-filed motion for summary judgment.  *See* Mot. for Summ. Judg., at 2 n.2.

argument on direct appeal, finding that although the first indictment did not allege a specific

victim of rape or attempted rape, the bill of particulars served to narrow the offense and that

Powell was therefore tried in the first trial only for the capital murder of Stacey during the

commission of, or subsequent to, the rape of Kristie.  *See Powell*, 590 S.E.2d at 552.  In reaching

this result, the Supreme Court of Virginia followed its well-established precedents holding that

"the bill of particulars and the indictment must be read together" as specifying the crime charged.

*Livingston v. Commonwealth*, 36 S.E.2d 561, 565 (Va. 1946); *see also Wade v. Commonwealth*,

388 S.E.2d 277, 279 (Va. Ct. App. 1990).  Put differently, a bill of particulars in Virginia

narrows an indictment such that once the Commonwealth has provided the defendant with a bill

of particulars, it may not prove its case with facts outside the scope of the bill of particulars.  *See*

*Powell*, 590 S.E.2d at 552; *Webster v. Commonwealth*, 127 S.E. 377, 378-79 (Va. 1925).  Based

on these established principles of Virginia law, the Supreme Court of Virginia found that the bill

of particulars, provided by the Commonwealth at Powell's request in the first trial, precluded the

prosecution, as a matter of law, from securing a capital conviction in that trial based on the

attempted rape of Stacey.  Citing this established law, the Supreme Court of Virginia ruled that

Powell's second trial was not a double jeopardy violation because the indictment in the second

trial charged a crime not charged in the first trial, namely the murder of Stacey subsequent to, or

in the commission of, the attempt to rape Stacey.

     Nor is it open to Powell to second-guess the role of a bill of particulars under Virginia

law.  *See Bradshaw*, 546 U.S. at 76.  Nonetheless, he argues that the Supreme Court of Virginia's

determination of this issue was "an unreasonable determination of the facts in light of the

evidence presented."  28 U.S.C. § 2254(d)(2).  Specifically, he claims the bill of particulars did

not limit the jury because (i) the prosecutor argued during trial that Powell "wanted something more" from Stacey, (ii) other witnesses suggested that Stacey refused to have sex with Powell, and (iii) the jury was not told about the limitation in the bill of particulars.  None of these arguments alter the fact that, as a matter of Virginia law, the bill of particulars limited the Commonwealth to proving the rape of Kristie as the gradation offense of the capital murder charge.  Thus, under settled Virginia law principles, Powell was not tried twice for the same crime; instead, he was tried twice, but each time for a different crime.

Seeking to avoid this result, Powell argues incorrectly that the Supreme Court's test from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), applies.  *Blockburger* is inapposite; it applies in situations where a defendant is charged with two crimes under *two different* criminal statutes based on the same conduct, whereas Powell was charged with two distinct crimes under the same statute.  In *Blockburger*, the Supreme Court held that "where the same act or transaction constitutes a violation of *two distinct statutory provisions*, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." (emphasis added).  This test does not apply, however, where, as here, a defendant is charged with two separate violations of the same statutory provision.[12]  The soundness of this point is well-illustrated by a simple hypothetical in which a defendant is charged under the same statute with the murders of Victim A and Victim B.  Under *Blockburger*, which looks only to the statutory elements of the indictments, these would be the same crimes in

---

[12] *See, e.g., Sanabria*, 437 U.S. at 70 n. 24; *United States v. Weathers*, 493 F.3d 229, 234 (D.C. Cir. 2007); *United States v. Smith*, 424 F.3d 992, 1000 (9th Cir. 2005); *United States v. Chipps*, 410 F.3d 438, 447-48 (8th Cir. 2005); *United States v. Goodine*, 400 F.3d 202, 207-08 (4th Cir. 2005).

the abstract. Yet, it is clear that a defendant could be charged for the murder of both victims. *See Sanabria*, 437 U.S. at 70 n. 24 (holding that the protection of the Double Jeopardy Clause does not preclude a defendant from being charged under a "statute[] defining as the criminal offense a discrete act, after a prior conviction or acquittal of a distinguishable discrete act that is a separate violation of the statute").

In sum, in each of his two trials Powell was charged with a separate and distinct crime under Virginia law. One crime required the proof of the murder of Stacey subsequent to, or in the commission of, the rape of Kristie, while the other required proof of the murder of Stacey subsequent to, or in the commission of, the attempted rape of Stacey. Powell has offered no reason to dispute the Supreme Court of Virginia's interpretation of legislative intent in this regard. Thus, the Supreme Court of Virginia's disposition of this issue was not contrary to, nor an unreasonable application of, U.S. Supreme Court precedent.[13]

**IV.**

Powell's next claim is that his Fifth Amendment due process right to a fair trial was violated during voir dire. The Supreme Court of Virginia rejected this argument on direct appeal. To understand this claim and the Supreme Court of Virginia's reasons for rejecting it, some factual context is necessary.

As already noted, the second indictment against Powell was based in part on the letter he sent to the Commonwealth's Attorney following the successful appeal of his first conviction. Powell began this letter by stating that he had "already been indicted on first degree murder and

---

[13] Powell also makes a collateral estoppel claim related to his Double Jeopardy claim. Because this claim was found procedurally barred during state habeas proceedings, it will be discussed with his other defaulted claims, *infra* Part VIII.A.

-18-

the Va. Supreme Court said that I can't be charged with capital murder again." J.A. at 1076.

Expecting the letter to be introduced in Powell's second trial, and wishing to minimize its

impact, Powell's counsel made a tactical decision to bring Powell's first conviction and

successful appeal to the jury's attention at the outset of the trial.  Consistent with this tactical

decision, Powell's counsel decided to refer to the prior trial in the course of the voir dire.

During voir dire, the venire was questioned in panels of five.  The judge asked the first

panel of five, *inter alia*, (i) whether they had prior knowledge of Powell or the current charges

against him, (ii) whether they had biases for or against the death penalty, and (iii) whether there

was any reason they could not serve as fair and impartial jurors in the case.  After questioning by

the judge, the Commonwealth's Attorney and the defense counsel were permitted to question the

panels further.  When Powell's counsel questioned the first panel, he told them that the evidence

would show Powell "has already been tried and convicted of capital murder at one point, and

he's serving three life sentences for other crimes." J.A. at 419.[14]  Then, when Powell's counsel

began describing to the panel that "the Supreme Court of Virginia overturned the - - ," the

Commonwealth's Attorney immediately interrupted and objected on the ground that this might

taint the jury under *Barker v. Commonwealth*, 337 S.E.2d 729 (Va. 1985), which held that a

person who has prior knowledge of an accused's previous conviction for the same offense cannot

serve as a juror during retrial for that offense.  *Powell,* 590 S.E.2d at 547.  Powell's counsel

responded that the defense believed evidence of Powell's prior conviction and successful appeal

would arise during trial through the introduction of Powell's letters to the Commonwealth's

---

[14] "J.A." refers to the Joint Appendix of Powell's direct appeal of his second conviction. "H.A.," cited elsewhere in this Memorandum Opinion, refers to the Appendix submitted with Powell's petition for state habeas corpus relief.

Attorney, and they therefore had made a tactical decision to disclose the prior trial to potential

jurors during voir dire, and to ask whether they could remain impartial in view of the prior

conviction.  The trial court sustained the Commonwealth's objection and precluded Powell's

counsel from pursuing that line of questioning, but refused to dismiss the panel of potential

jurors, relying instead on an instruction to the panel to disregard Powell's counsel's comment.

*Id.*

On direct appeal, Powell argued that his right to a fair trial was violated by the trial

court's refusal to allow this line of questioning, arguing that this questioning fell within the ambit

of Va. Code § 8.01-358, which states that either party has the right to question a prospective juror

about "whether he is related to either party, or has any interests in the cause, or has expressed or

formed any opinion or *is sensible of any bias or prejudice therein*."[15]  The Supreme Court of

Virginia rejected Powell's claim, finding that Powell's question did not fall under Va. Code §

8.01-358 because rather than testing for bias, it simply "served to test the jurors' potential

response to the evidence that he expected the Commonwealth to present."  *Powell*, 590 S.E.2d at

559.  The Supreme Court of Virginia further noted that the trial court has the sole discretion to

allow voir dire on any matters outside the scope of Va. Code § 8.01-358.  *Id.*

To begin with, Powell may not complain here that the Supreme Court of Virginia erred in

its interpretation of Va. Code § 8.01-358, as it is settled that "a state court's interpretation of state

law, including one announced on direct appeal of the challenged conviction, binds a federal court

_____

[15] Va. Code § 8.01-358 (emphasis added); *see LeVasseur v. Commonwealth*, 304 S.E.2d 644, 653 (1983) (holding that if a voir dire question "would necessarily disclose, or clearly lead to the disclosure of the statutory factors of relationship, interest, opinion, or prejudice, it must be permitted").

-20-

sitting in habeas corpus." *Bradshaw*, 546 U.S. at 76.[16]  Nor is there any merit in Powell's claim

that the Supreme Court of Virginia's decision violates due process.  While Supreme Court

precedent makes clear that a mandatory state law in some instances can create liberty interests

protected under the Due Process Clause of the Fourteenth Amendment,[17] Powell has failed to

show he was denied a mandatory right under Virginia law, and indeed the Supreme Court of

Virginia concluded to the contrary.

       Powell further argues that once the trial court refused to allow questioning about the

effect of the prior trial, it further violated his right to a fair and impartial jury by refusing to strike

the panel of potential jurors who were told about Powell's previous conviction.  This claim is

meritless.  First, Powell cites no controlling U.S. Supreme Court precedent in support of his

claim, but instead bases his claim solely on *Barker*, a Virginia case holding that "when a

venireman knows of an accused's previous conviction of the same offense for which he is being

retried, the venireman cannot qualify as a juror in the new trial." 337 S.E.2d at 733.  Even

assuming Powell's argument is correct, a state court's alleged misapplication of state law is not a

ground for habeas relief under § 2254.  *See Thomas*, 192 F.3d at 449 n.1.  Moreover, *Barker* and

the federal cases cited by Powell in support of his claim[18] are inapposite, as Powell was not being

---

      [16] *See also Thomas v. Davis*, 192 F.3d 445, 449 n.1 (4th Cir.1999) (noting that a state's highest court "is, of course, the ultimate arbiter of that state's laws; a claim that it had simply misconstrued an act of the state legislature would not be cognizable on federal collateral review"); *Humphries v. Ozmint*, 397 F.3d 206, 226 (4th Cir. 2005) (stating that "an issue of state law . . . is not cognizable on federal habeas review").

      [17] *See Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Clemons v. Mississippi*, 494 U.S. 738, 746-47 (1990) (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346-47 (1980)).

      [18] *See Arthur v. Bordenkircher*, 715 F.2d 118, 120 (4th Cir. 1983); *United States v. Williams*, 568 F.2d 464, 471 (5th Cir. 1978).

retried for the same offense in his second trial for which he was convicted in his first trial.  *See* Part III, *supra*.  Rather, as already clearly established, Powell's second trial was for a second crime, separate and distinct from the crime for which he was tried in his first trial.

Finally, it is important to note a further state law ground on which this claim founders. The Supreme Court of Virginia correctly found that Powell invited any error that may have been committed by the trial court in this regard.  *See Powell,* 590 S.E.2d at 559-60.  It was Powell who chose to disclose to the potential jurors that he had been previously convicted of capital murder. Hence, under the doctrine of "invited error," Powell may not contend that potential jurors were tainted by their knowledge of his prior conviction when he is the one who disclosed the prior conviction to them.  *See Saunders v. Commonwealth*, 177 S.E.2d 637, 638 (1970) (holding that a court will not "notice error which has been invited by the party seeking to take advantage thereof on appeal"); *see also United States v. Collins*, 372 F.3d 629, 635 (4th Cir. 2004) (noting that "a defendant in a criminal case cannot complain of error which he himself has invited"); *United States v. Thomas*, 77 Fed. Appx. 673, 675 (4th Cir. 2003) (finding that a defendant who submitted voir dire questions to the court could not appeal his conviction on the ground that the court's use of that line of questioning was improper).

Accordingly, for all these reasons, Powell's claim for habeas relief arising from the voir dire process fails.

## V.

In his next claim for relief, Powell alleges that the trial court erred in admitting evidence about Powell's rape and attempted murder of Kristie during the guilt determination phase of the trial.  Powell points out, for example, that the Commonwealth presented extensive graphic

testimony from Robert Culver, describing Kristie's appearance when he found her naked and bleeding after Powell raped and attempted to kill her.  In addition, the detective who responded to the scene, Kristie's doctor, and Kristie all testified about Powell's attack on Kristie.  Powell claims the evidence of these crimes was irrelevant to the crime charged in the second trial because these crimes took place after the attempted rape and murder of Stacey.  Even if this evidence were relevant, Powell contends it should have been excluded as unfairly prejudicial.[19]

The Supreme Court of Virginia found no error in the admission of this evidence, concluding instead that the evidence was admissible as "a common criminal scheme" under Virginia evidence laws.  *Id.* at 557; *see also Tomlinson v. Commonwealth*, 380 S.E.2d 26, 30 (Va. 1989) (holding that evidence of other crimes, though generally inadmissible to show character, is admissible to show, for instance, proof of motive or plan).  Additionally, the Supreme Court of Virginia acknowledged that the evidence of Powell's crimes against Kristie was powerful, but noted that "the mere fact that such evidence is powerful because it accurately depicts the gravity and atrociousness of the crime or the callous nature of the defendant does not thereby render it inadmissible."  *Powell,* 590 S.E.2d at 558.  In other words, the Supreme Court of Virginia acknowledged that this evidence was damaging to Powell's defense, but concluded nonetheless that it was admissible under Virginia law as part of a "common criminal scheme." *Id.* at 557.  Moreover, because there was evidence that "Powell went to the Reed home with the

---

[19] Powell also claims this evidence is best characterized as "victim impact" evidence, inadmissible during the guilt determination phase of trial.  The Supreme Court of Virginia found this argument procedurally barred on direct appeal, as Powell failed to raise it at trial.  *Powell*, 590 S.E.2d at 557 n.11.  A federal habeas court may not, therefore, consider this argument under § 2254 unless there is cause and prejudice shown with respect to the default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Powell makes no such showing.

intention of raping and killing both Stacey and Kristie," the Supreme Court of Virginia found

that evidence of the crimes against Kristie was "directly probative of [Powell's] motive and

intent" in the crimes against Stacey. *Id.* at 558.  Simply put, the Supreme Court of Virginia

found that evidence of Powell's rape and attempted murder of Kristie, which took place

immediately after the attempted rape and murder of Stacey, was relevant to show his intent with

respect to Stacey. *Id.*  The Supreme Court of Virginia also noted that Powell later explained that

he intended to kill the entire family when he went to the Reed house, and that he had to kill

Kristie in part because she was a witness to his crimes against Stacey. *Id.*

A decision to admit evidence under state law is not reviewable by a federal habeas court

"unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally

fair proceeding." *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000).  The key inquiry is

whether the error "so infected the trial with unfairness as to make the resulting conviction a

denial of due process." *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v.*

*DeChristoforo*, 416 U.S. 637 (1974)).

Measured against this standard, Powell's claim fails.  The admission of evidence of his

crimes against Kristie had a legitimate purpose under state law and the fact that the evidence was

potentially harmful to Powell does not render it unconstitutionally prejudicial.[20]  As the Supreme

---

[20] Nor does Powell's cited authority support the result he seeks.  Although the cases
acknowledge the principle that erroneous admission of evidence can rise to a federal
constitutional violation, not one of those cases found that an error of constitutional magnitude
occurred. *See Estelle v. McGuire*, 502 U.S. 62, 70 (1991) (declining to reach the question
whether "it is a violation of the due process guaranteed by the Fourteenth Amendment for
evidence that is not relevant to be received in a criminal trial"); *Payne v. Tennessee*, 501 U.S.
808, 825 (1991) (recognizing that where "evidence is introduced that is so unduly prejudicial that
it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment
provides a mechanism for relief," but finding no such unfairness in the present case); *Humphries*

Court of Virginia reasonably found, such evidence was probative of Powell's motive and intent

in killing Stacey, and the two events were part of the same criminal plan.  This Supreme Court of

Virginia finding does not contravene, or involve an unreasonable application of, federal law, nor

is it based on an unreasonable determination of facts.

## VI.

Powell's next claim stems from statements he made to police following his successful

appeal from his first conviction.  This appeal resulted in the vacation of his conviction for capital

murder, as charged in the first indictment, and a remand limiting a retrial on the first indictment

to no greater than first degree murder.  Believing he could no longer be tried for capital murder,

Powell wrote a letter to the Commonwealth's Attorney confessing to his crimes and admitting

additional facts.  Thereafter, police questioned Powell about this letter while he was awaiting

retrial on the charges in the first indictment.  During this questioning, Powell authenticated his

letter and made incriminating statements that were used against him in his second trial.  *Powell*,

590 S.E.2d at 558.  Powell claims the questioning violated his Sixth and Fourteenth Amendment

right to counsel because it occurred while he was awaiting retrial for the murder of Stacey, a

charge on which he was represented by counsel.[21]

In rejecting this claim on direct appeal, the Supreme Court of Virginia correctly noted

that the Sixth Amendment right to counsel is offense-specific.  *See Powell*, 590 S.E.2d at 558;

---

*v. Ozmint*, 397 F.3d 206, 217 (4th Cir. 2005) (same); *Burket*, 208 F.3d at 186 (same); *Turrentine v. Mullin*, 390 F.3d 1181, 1201 (10th Cir. 2004) (same); *Janecka v. Cockrell*, 301 F.3d 316, 328-29 (5th Cir. 2002) (same).

[21] Powell also makes two closely related claims concerning this questioning.  Because these claims were found procedurally defaulted by the Supreme Court of Virginia, they are discussed *infra* Part VIII.B.

*see also McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).  It then noted that, based on its double jeopardy ruling, the crime about which Powell was questioned, namely the murder of Stacey subsequent to, or in the commission of, the attempted rape of Stacey, was "a separate offense from those for which he had been previously convicted."  *Powell*, 590 S.E.2d at 558.  Because the challenged interrogation concerned a new crime for which Powell had not been previously charged, the Supreme Court of Virginia held that Powell's Sixth Amendment right to counsel had not yet attached to that new crime.  *Id.*

This finding is neither contrary to, nor or an unreasonable application of, clearly established Supreme Court precedent.  It is well-established that a defendant's Sixth Amendment right to counsel is offense-specific.  *McNeil*, 501 U.S. at 175.  It is also clear that, according to the Supreme Court of Virginia's reasonable application of U.S. Supreme Court double jeopardy precedent, the crime charged in Powell's second trial was an offense separately chargeable from the crimes charged in his first trial.  Thus, under Virginia law, the two capital crimes were separate offenses, and Powell's Sixth Amendment right had attached only to the capital crime charged in the first trial.  Therefore, Powell's Sixth Amendment rights were not violated when he was interrogated about the new crime.

Nor can Powell escape this conclusion by arguing, as he does, that he was effectively charged with first degree murder when the Supreme Court of Virginia vacated his capital murder conviction and remanded with the instruction that Powell could be charged with no greater than first degree murder.  *See Powell*, 552 S.E.2d at 545.  Powell is correct that, had he been charged with first degree murder, his Sixth Amendment right to counsel would have attached both to that charge and to the charge of capital murder, as first degree murder is a lesser-included offense of

-26-

capital murder.  *See Hudson v. Commonwealth*, 591 S.E.2d 679, 680 (Va. 2004).  Yet, Powell

was never charged with first degree murder.  Although the Supreme Court of Virginia held that

Powell could be charged with no more than first degree murder on remand, it did not, nor could it

have, formally charged Powell with first degree murder.  Thus, in the first indictment, as

modified by the bill of particulars, Powell had only been charged with the capital murder of

Stacey subsequent to, or in the commission of, the rape of Kristie.  His Sixth Amendment right to

counsel had therefore attached only to that crime (and to lesser included offenses), but had not

attached to the separate and distinct crime of the capital murder of Stacey subsequent to, or in the

commission of, the attempted rape of Stacey.  Hence, Powell's claim that the post-remand

questioning violated his right to counsel must fail.

## VII.

Next, Powell claims that trial counsel provided ineffective assistance during the

sentencing phase of his trial by failing to investigate all reasonably available mitigating evidence.

More specifically, he argues that a more thorough investigation would have uncovered evidence:

(i) to rebut the Commonwealth's claim that Powell was racist and tortured animals; (ii) to rebut

the Commonwealth's claim that Powell had no remorse for his crime against Stacey; (iii) to rebut

the Commonwealth's claim that Powell had an above-average intelligence; (iv) to support a

compelling mitigating case; and (v) to rebut the Commonwealth's use of Powell's letters to the

Commonwealth's Attorney and Stacey's mother.  The Supreme Court of Virginia rejected

Powell's ineffectiveness claim, applying the U.S. Supreme Court's well-known test from

*Strickland v. Washington*, 466 U.S. 668 (1984).

It is well-settled that an individual claiming ineffective assistance of counsel must show,

first, that counsel's performance was deficient, in that it "fell below an objective standard of reasonableness." *Id.* at 687-88.  The Supreme Court has noted that this is a deferential standard. Once counsel makes a reasonable investigation of law and facts in a particular case, his strategic decisions are "virtually unchallengeable." *Id.* at 690.  There is, of course, a distinction between a tactical or reasonable professional judgment to limit an investigation and a failure to do so as a result of inattention or indolence.  The former is appropriately assessed under the deferential standard, while the latter constitutes ineffective assistance of counsel provided the requisite prejudice resulted.  *Id.* at 691; *see also Wiggins v. Smith*, 539 U.S. 510, 526 (2003) (distinguishing between failure to investigate stemming from "inattention" and a decision not to investigate based on "reasoned strategic judgment").  Thus, when the claim is that counsel failed to present a sufficient mitigating case during sentencing, the inquiry "is not whether counsel should have presented a mitigation case" but "whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable.*"  *See Wiggins*, 539 U.S. at 523 (emphasis in original).  Under the second prong of *Strickland*,  a court finding a deficient performance by counsel may not set aside a conviction unless the defendant can demonstrate prejudice.[22]  This requires a defendant to show by "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. If the deficient performance occurred during sentencing that resulted in the imposition of the death penalty, a petitioner must show that "absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."

---

[22] It should be noted that the "performance" prong need not be analyzed before the "prejudice" prong; if it is clear that an ineffectiveness claim is meritless because of lack of prejudice, there then is no need to analyze the performance prong. *Id.* at 697.

*Id.* at 695.

Because the Supreme Court of Virginia applied *Strickland* in rejecting Powell's ineffectiveness claim, its decision was not "contrary to" clearly established federal law.  Thus, review here is limited to whether the Supreme Court of Virginia applied *Strickland* unreasonably or made an unreasonable determination of the facts in light of the evidence presented.  *See* § 2254(d)(1) & (2); *see also Bell v. Cone*, 535 U.S. 686, 699 (2002) (holding that, to prevail under § 2254, a petitioner "must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner").

## A.

Powell first alleges that a more thorough investigation would have disclosed evidence to rebut the Commonwealth's evidence that Powell was racist and tortured animals.  In this regard, it is worth recounting that Powell himself was the source of this evidence, as Powell admitted to police that he was racist and tortured animals.  *See Powell*, 2005 WL 2980756, at *18.  More specifically, Powell told police that he disapproved of Stacey's interracial relationship and a paper found in his cell was covered with racial and ethnic slurs.  He also told detectives that he "blew up [cats] with firecrackers" and would beat and kick them until they died.  J.A. at 891. Indeed, affidavits supplied by Powell himself in support of his claim for state habeas relief supported the idea that he regularly made racist comments and told stories about torturing animals.  *Powell*, 2005 WL 2980756, at *18.[23]

Despite this evidence, Powell now claims that he only made racist comments for their

---

[23] For example, a middle-school classmate of Powell's stated that Powell told stories about torturing animals.  H.A. at 2781.  Powell's cousin and three of his close friends all stated that Powell made racist comments.  H.A. at 2787, 2806, 2810, 2828.

"shock value" and "wore racism like fashionable clothing" to impress certain groups of people. *See* Pet. at 62-63.  To support his claim, Powell points to affidavits stating that Powell had lived, without incident, in a halfway house in which seventy-five percent of the occupants were black. He submitted an affidavit from his cousin, who stated that Powell was not aggressive toward her when she dated a black man.  Powell claims a more thorough investigation by counsel also would have shown that Powell was observed sharing a cigarette with a black man in front of his apartment and had lived with another black man for a short period of time.  Finally, Powell claims that a reasonable investigation would have uncovered evidence to rebut the Commonwealth's assertion that he tortured animals.  He points to affidavits from friends and family members who stated that Powell was always kind to their pets.  Some of his friends stated that they did not believe Powell's stories about torturing animals.

In applying *Strickland*, the Supreme Court of Virginia found neither deficient performance nor the requisite prejudice.  *Powell*, 2005 WL 2980756, at *18.  In light of Powell's own numerous statements to the contrary, the Supreme Court of Virginia correctly held that Powell's trial counsel's performance was not deficient in choosing not to investigate whether Powell meant what he said about these aspects of his character.  *See id.*  This analysis was not an unreasonable application of *Strickland*, which does not require trial counsel to investigate every possible aspect of his or her client's personality and background.  *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (noting that "the duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up").  Indeed, if, after speaking with the client, counsel determines that a particular type of "evidence would be of little help," he is not deficient

in failing to investigate further.  *Strickland*, 466 U.S. at 699.[24]  Because Powell's trial counsel

had numerous statements from *Powell himself* bragging about his racist beliefs and animal

torture, it was not unreasonable for the Supreme Court of Virginia to conclude that counsel was

not deficient for failing to investigate these characteristics further.

Nor can Powell demonstrate prejudice from the failure to introduce this evidence.  Even

if Powell's proffered evidence had been introduced, the jury would have had to weigh it against

Powell's own racist comments and stories of animal torture.  In short, the mitigating evidence of

Powell's tolerance of others and kindness to animals would have had to outweigh Powell's own

statements to the contrary.  Thus, to affect the outcome of Powell's sentence, Powell essentially

would have had to convince a jury that he lied about being a racist and torturing animals.

Because Powell's proffered evidence simply does not outweigh the overwhelming aggravating

evidence presented, Powell has not shown that he was prejudiced by counsel's performance.  *See*

*Wiggins*, 539 U.S. at 534-35 (finding that, when assessing prejudice under *Strickland*, a court

should "reweigh the evidence in aggravation against the totality of the mitigating evidence").

### B.

Powell next claims counsel was ineffective in failing to discover evidence to rebut the

Commonwealth's claim that Powell lacked remorse for his crime.  Powell points to affidavits of

---

[24] The Supreme Court's decision in *Rompilla* is distinguishable.  In *Rompilla*, the Court
held that "even when a capital defendant's family members and the defendant himself have
suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts
to obtain and review material that counsel knows the prosecution will probably rely on as
evidence of aggravation at the sentencing phase of trial."  545 U.S. at 377.  Here, Powell does not
allege, nor is there any indication, that counsel failed to review the aggravating evidence likely to
be presented by the Commonwealth.  Nor does Powell assert that counsel relied on assurances
from Powell that there was no mitigating evidence available in deciding not to pursue this
particular mitigation strategy.  Hence, *Rompilla* is inapposite in this regard.

his probation officer, a nurse at his prison facility, and a police officer, all of whom said that Powell had expressed remorse to them.  Powell also claims that counsel should have introduced during sentencing the fact that Powell cried when the tape of the 911 call about Kristie was played during his first trial.

The Supreme Court of Virginia found no deficient performance nor prejudice under *Strickland*.  *Powell*, 2005 WL 2980756, at *19.  Instead, the Supreme Court of Virginia found "that there was overwhelming evidence that petitioner lacked remorse."  *Id.*  For instance, in his letter to the Commonwealth's Attorney after his successful appeal, Powell bragged about his crime and admitted that after killing Stacey, he had smoked a cigarette and enjoyed a glass of iced tea.  At no point in the letter did Powell express remorse.  *Id.*  Powell also stated that he wanted Stacey's parents to "relive it all over again because if I have to suffer for the next 50 or 60 years or however long then they can suffer the torment of reliving what happened."  *Id.*  In the letter to Stacey's mother in which Powell enclosed a nude photograph resembling Stacey, he expressed no remorse for his crime.  *Id.*  In the face of such overwhelming evidence to the contrary, the Supreme Court of Virginia found that it was not deficient performance for counsel to fail to investigate whether Powell was remorseful.  *Id.*  Furthermore, the Supreme Court of Virginia found that Powell failed to show that if evidence of his remorse had been presented, "the result of the proceeding would have been different."  *Id.*

While the decision not to introduce evidence of Powell's remorse is questionable, there is no showing that counsel's performance was objectively unreasonable.  As with the evidence about Powell's racist beliefs and animal torture, the evidence of Powell's lack of remorse for his crime was overwhelming.  Indeed, Powell's second trial came about solely because of the letter

he wrote, bragging about his crimes against Stacey and taunting the Commonwealth's Attorney. In the face of such evidence, it is not objectively unreasonable for trial counsel to have decided not to "scour the globe" for evidence of Powell's remorse. *See Rompilla*, 545 U.S. at 383.

Yet, even assuming counsel's performance in this regard was deficient, Powell has not demonstrated that the evidence he mentions would have affected the outcome of his sentence. Rather, where there are "overwhelming aggravating factors," a court may find that omitted evidence would have had no reasonable probability of affecting the sentence. *See Strickland*, 466 U.S. at 699. Because the evidence overwhelmingly showed that Powell had no remorse for his crimes, he has not shown that but for counsel's failure to present the evidence of remorse he now adduces, the jury would not have sentenced him to death.

## C.

Powell next claims that trial counsel was ineffective in failing to present evidence to rebut the Commonwealth's claim that Powell was of above-average intelligence. The Commonwealth's Attorney noted at sentencing that Powell was "no dummy. He's got an above average — at least average intelligence." J.A. at 1031.[25] Powell's experts at trial and the evidence he now offers suggest that he was "average or below," or "within the average range of intelligence," and was "capable of functioning in the average range despite low average range IQ scores." *Powell*, 2005 WL 2980756, at *19. Because the evidence Powell supported, rather than refuted, that Powell falls within the average range of intelligence, the Supreme Court of Virginia found no deficient performance by counsel.

---

[25] Powell does not cite the record in making this claim, but after thoroughly reviewing the record, it appears this closing argument statement is the only suggestion made by the Commonwealth that Powell was of above-average intelligence.

This was not an unreasonable application of *Strickland*.   None of the evidence on which Powell relied during his state habeas proceedings, nor any of the evidence he now cites, supports Powell's claim that he is of below-average intelligence. At most, the record evidence is that Powell falls on the low side of the average range of intelligence.   Indeed, Powell's own counsel presented expert testimony that Powell fell within an average range of intelligence.   As a result, there was simply no deficient performance in failing to present this mental intelligence evidence, and there is no plausible argument that Powell suffered any prejudice.   Therefore, Powell's claim in this regard fails.

### D.

Next, Powell claims that trial counsel's performance was deficient because it failed to discover evidence to support a "compelling mitigation case."   He claims that counsel presented "less than two hours of weak testimonial evidence" and no documentary evidence. Pet. at 65. Furthermore, Powell states that his mother was ill-prepared by counsel for her testimony and that counsel met with his brother, Matthew, for only ten minutes shortly before the trial.   *Id*.   Finally, Powell points to an affidavit by Dr. Stejskal, the psychologist who testified on his behalf, stating that Dr. Stejskal testified concerning only ten percent of his findings and was "very surprised" that counsel limited his testimony.   *Id*.   Dr. Stejskal said that he felt that counsel "had done Mr. Powell a disservice" by "deviat[ing] from the planned presentation of the mitigation evidence." *Id*. at 65-66.   More specifically, Powell alleges that evidence was readily available to show that he: (i) had a "toxic" home life and adolescence; (ii) had a history of mental problems; (iii) faced many obstacles to getting his problems treated; (iv) was homeless shortly before committing his crimes; and (v) showed no signs of future dangerousness while in prison.

First, Powell claims counsel was ineffective in failing to discover evidence that Powell had a "toxic" home life and adolescence. He points to numerous documents outlining that both Powell and his brother were physically and emotionally abused by their father, including a 1991 family assessment completed by a psychiatric facility, reports from a probation officer, and a 1993 mental health report. He also points to a report by a guardian ad litem recommending that Powell be removed from his home. Other evidence includes the fact that Powell was sexually assaulted at age 17.

The Supreme Court of Virginia rejected this claim, finding no deficient performance under *Strickland* because counsel did investigate Powell's home life and did present evidence of this during the sentencing phase. Specifically, counsel presented testimony from multiple witnesses regarding Powell's "toxic home life," including Powell's brother, mother, and father. *Powell,* 2005 WL 2980756, at *21. This evidence included testimony regarding the abuse Powell sustained at the hand of his father. Dr. Stejskal, Powell's expert, also testified about Powell's difficult upbringing and home life, specifically noting that his home environment was "toxic." *Id.* The Supreme Court of Virginia also found that Powell was not prejudiced by counsel's performance in this regard. It held that, to the extent any additional information may have been presented on this point, it would either be cumulative or not helpful and would not have changed the outcome of Powell's death sentence. *Id.* Because most of the evidence to which Powell points was presented in some form during sentencing, and because he has offered no reason to believe cumulative evidence on this point would have affected the outcome of his sentence, the Supreme Court of Virginia's disposition of this ineffectiveness claim is not an unreasonable application of *Strickland*.

Powell also asserts that trial counsel was ineffective in failing to investigate Powell's mental health problems.  He cites psychological evaluations from 1991, 1993, and 1995, and reports from Prince William County Schools and the Manassas Public Schools in support of his claim.  The Supreme Court of Virginia found that counsel's performance was not deficient in this regard, noting that in preparation for each of Powell's trials, Dr. Stejskal, Powell's appointed mitigation expert, reviewed all of Powell's mental health reports, including those Powell now cites.  *Id.*  The Supreme Court of Virginia also noted that Dr. Stejskal, in turn, based his evaluation of Powell's mental health on those reports and his own meetings with Powell.  *Id.*  Given this, the Supreme Court of Virginia found that trial counsel was not deficient in relying on the expert's distillation of Powell's mental health history.  *Id.*

This analysis was not an unreasonable application of *Strickland*.  The evidence to which Powell now cites was part of counsel's investigation, as it was used by Powell's expert in presenting a case about Powell's mental health history.  Counsel's strategic decision to rely on one expert to cover all of Powell's mental health history was not objectively unreasonable.  Nor was there any prejudice from counsel's decision not to offer the mental health reports themselves into evidence, as the mitigation testimony clearly outlined Powell's visits to mental health facilities, the fact that he engaged in self-mutilation and had suicidal tendencies, and doctors' multiple attempts to find a medication to help Powell.  In short, Powell does not contend that no mental health evidence was presented; rather, he claims counsel should have presented this evidence in greater detail or in documentary form.  This claim falls far short of showing deficient performance or prejudice under *Strickland*; Powell's counsel presented substantial mitigation testimony regarding Powell's mental health.  In sum, Powell has not demonstrated that the

mitigation evidence to which he points, which is cumulative of the evidence presented, would have changed the outcome of his sentence.  Thus, the Supreme Court's application of *Strickland* in this regard was not unreasonable.

Next, Powell claims counsel was ineffective in failing to present mitigating evidence concerning the obstacles Powell faced in receiving treatment for his mental health problems. These obstacles included the fact that Powell's father refused to allow Powell back into the house after he received treatment in a psychiatric facility and refused to attend court-ordered family counseling.  Powell also notes that while one round of counseling was productive for him, it was cut short because of budgetary and staffing concerns.

The Supreme Court of Virginia reasonably rejected ths ineffectiveness claim, finding neither prong of *Strickland* satisfied.  *Id.* at *22.  It held, and the record supports, that the jury did in fact hear all of the evidence to which Powell now points.  *Id.*  Counsel presented evidence that Powell's father refused to participate in family counseling.  Moreover, the jury heard evidence that Powell did not complete some of his treatments and never received others that were suggested for him.  As the Supreme Court of Virginia reasonably found, the evidence Powell now cites would be cumulative of evidence already presented to the jury.  *Id.*  As such, counsel's choice not to offer more of the same evidence did not constitute deficient performance; nor can Powell show that additional evidence on these points would have affected the outcome of his sentence.  Therefore, it was not unreasonable or contrary to *Strickland* for the Supreme Court of Virginia to reject this claim.

Next, Powell argues that counsel was ineffective in failing to present evidence of Powell's homeless life prior to killing Stacey.  Powell notes that he was homeless during this

time, alternately living in his car and on friends' couches.  Powell's aunt refused to allow Powell

to live with her, and Powell's mother and brother refused to allow Powell in the house even to

shower.  Powell also states that, during this period of his life, he "lost friends because he was

clingy, acted weird, and jealous" of other men who dated Stacey.  Pet. at 75.  Finally, Powell

notes that he was drinking almost a case of beer a day when he committed his crimes against

Stacey and Kristie.

The Supreme Court of Virginia rejected this ineffectiveness claim, finding that Powell

was homeless "because his family was either afraid he would steal from them or because the

children in the home were frightened of him" and that Powell's friends found him "weird" and

"clingy."  *Powell*, 2005 WL 2980756, at *22.  The Supreme Court of Virginia further found that

Powell's counsel made a strategic decision not to call Powell's family and friends for these

points, as this evidence could be seen as aggravating, not mitigating evidence.  *Id.* (citing *Barnes*

*v. Thompson*, 58 F.3d 971, 980-81 (4th Cir. 1995) (finding reasonable counsel's decision not to

introduce evidence that "would have been counterproductive").  This was not an unreasonable

application of *Strickland*, which dictates that the Sixth Amendment was not designed to allow a

court to second-guess strategic decisions by counsel.  *See Bell v. Cone*, 535 U.S. 685, 702 (2002)

(noting that "a court must indulge a 'strong presumption' that counsel's conduct falls within the

wide range of reasonable professional assistance because it is all too easy to conclude that a

particular act or omission of counsel was unreasonable in the harsh light of hindsight").

Finally, Powell claims that his trial counsel should have presented evidence that Powell

lacked future dangerousness if imprisoned for life.  He cites reports that he responded well to his

school's structural environment and to his stay in a juvenile detention home.  He also notes that

-38-

he earned a G.E.D. while incarcerated in 1995 and was released from parole in 1997.  Powell

also points to the fact that he had no recorded disciplinary infractions while incarcerated for his

crimes against Stacey and Kristie.

The Supreme Court of Virginia found no deficient performance by trial counsel on this

count, noting that counsel presented the testimony of Dr. Stejskal, who explained that Powell had

no disciplinary infractions while in prison and was responding well to medication and psychiatric

care.  *Powell*, 2005 WL 2980756, at *23.  The Supreme Court of Virginia also found that even if

trial counsel had presented all of the evidence which Powell now cites, no prejudice could be

shown in light of the "overwhelming" evidence of Powell's future dangerousness presented by

the Commonwealth.  *Id.*  Evidence of future dangerousness included Powell's own racist

statements that "everybody that ain't white . . . needs to die" and that if he had had a gun, he

would "kill[] a lot of somebodies."  *Id.*  Powell also wrote a letter to a friend, asking that

"somebody go to a pay phone and call Kristie and tell her she better tell the cops that she lied to

them and tell her she better not testify against me or she's gonna die."  J.A. at 1217.

The Supreme Court of Virginia's application of *Strickland* to this claim was not

objectively unreasonable.  Because Powell's counsel presented some of the evidence rebutting

Powell's future dangerousness, and because the aggravating evidence on this point was

overwhelming, it was not unreasonable for the Supreme Court of Virginia to conclude that

Powell's ineffectiveness claim on this ground was without merit.  *See Strickland*, 466 U.S. at

699.

### E.

Finally, Powell argues that counsel provided him ineffective assistance during the

sentencing phase of his trial by failing to investigate evidence to rebut the force of the letters he

wrote to the Commonwealth's Attorney and to Stacey's mother.  Powell claims he has a history

of "self-destructive behavior" during times of "heightened stress," and that his letters

demonstrate neither pride nor lack of remorse for his crimes, but rather are evidence of his

mental health problems.   Pet. at 77.  Because Powell did not assert this claim at any point during

state proceedings, it is simultaneously exhausted and defaulted.  *See Matthews v. Evatt*, 105 F.3d

907, 911 (4th Cir. 1997) (stating that "the exhaustion requirement is technically met when . . . a

state procedural rule would bar consideration if the claim was later presented to the state court");

*see also Gray v. Netherland*, 518 U.S. 152, 162 (1996) (noting that the "failure to raise [a claim]

in state court implicates the requirements in habeas of exhaustion and procedural default").

It is exhausted because, under Va. Code § 8.01-654(b)(2), Powell is barred from bringing a

successive habeas petition "on the basis of any allegation the facts of which petitioner had

knowledge at the time of filing any previous petitions."[26]  Because this state procedural rule

provides an adequate and independent ground for denying relief on this claim, a federal habeas

court may not consider it unless Powell alleges cause and prejudice for the default.  *See Gray*,

518 U.S. at 162 (citing *Teague v. Lane,* 489 U.S. 288, 298 (1989)).  Powell has alleged no cause

for the default, and hence the merits of this ineffectiveness claim may not be reviewed here.

## VIII.

The remainder of Powell's claims were not considered by the Supreme Court of Virginia

---

[26] It is also barred under Va. Code § 8.01-654.1, which states that "[n]o petition for a writ of habeas corpus . . . shall be considered unless it is filed within sixty days after the earliest of: (i) denial by the United States Supreme Court of a petition for a writ of certiorari to the judgment of the Supreme Court of Virginia on direct appeal."

on direct appeal and were therefore found procedurally defaulted during state habeas proceedings under the rule set forth in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), namely holding that the Supreme Court of Virginia may not entertain a claim during state habeas proceedings that was not raised at trial or on direct appeal.  Because this state procedural rule supplies an adequate and independent ground for denial of a claim for habeas relief, a federal habeas court may not review defaulted claims absent "cause and prejudice" for the default.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  In some circumstances, ineffective assistance of counsel may be sufficient "cause" for a defaulted claim.  *See Edwards,* 529 U.S. at 451; *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 480 (E.D. Va. 2005).  Importantly, where a petitioner for federal habeas relief seeks review of claims defaulted during state habeas proceedings, he must show that he raised the ineffectiveness argument as a cause for the defaulted substantive claims during his state habeas proceedings.  If a petitioner did not raise the ineffectiveness claim at the state habeas level, a federal habeas court may not consider it.  *Edwards*, 529 U.S. at 452-53.

Where, as here, a petitioner raised an ineffectiveness claim as cause for default in state court, the question arises whether a federal habeas court should review the state court's resolution of that claim *de novo* or deferentially under § 2254(d).  Put differently, the question is whether "the same claim of ineffective assistance of counsel get[s] reviewed differently when presented merely as cause for a procedural default as opposed to being presented in a petition as the basis in the first instance for habeas relief."  *Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003).

This question is unresolved in this circuit,[27] and the handful of courts to have considered

---

[27] The Fourth Circuit expressly refrained from ruling on the issue.  *See Orbe v. True*, 82 Fed. Appx. 802, 808 (4th Cir. 2003) (finding it "unnecessary to resolve" whether federal review of an ineffectiveness claim as cause for procedural default is *de novo* or is subject to § 2254).

the issue have reached differing results.  The Third and Sixth Circuits, for instance, have held

that a federal habeas court must review *de novo* a petitioner's claim of ineffective assistance of

counsel as cause for default of another claim.[28]  The opposing view holds that AEDPA's

deferential standard applies.[29]  Resolution of this review standard question turns on the language

of § 2254(d), which states that "a writ of habeas corpus . . . shall not be granted with respect to

any *claim* that was adjudicated on the merits in State court proceedings."  28 U.S.C. § 2254(d)

(emphasis added).  Those courts holding that a *de novo* review applies have interpreted "claim"

to apply only to the underlying defaulted claim, and not to the issue of cause for defaulting that

claim.[30]  The contrary view is that § 2254(d)'s deferential standard of review also applies to a

claim of ineffective assistance of counsel asserted as cause for a procedurally defaulted claim

because *Edwards* requires that an ineffectiveness claim as cause for default "must be presented to

---

The Seventh Circuit has likewise explicitly refrained from deciding this "preliminary puzzle." *Lee*, 328 F.3d at 901 (finding that "regardless whether we review Lee's ineffective assistance claim de novo or deferentially, our answer is still the same: there was no ineffective assistance of appellate counsel because Lee cannot show prejudice").

[28] *See Joseph v. Coyle*, 469 F.3d 441, 459 (6th Cir. 2006) (stating that while a habeas petitioner "must satisfy the AEDPA standard with respect to his independent IAC claim, he need not do so to claim ineffective assistance for the purpose of establishing cause" for defaulting another claim); *Fischetti v. Johnson*, 384 F.3d 140, 154-55 (3d. Cir. 2004) (same); *see also Holloway v. Horn*, 161 F. Supp. 2d 452, 478 n. 12 (E.D. Pa. 2001) (same), *rev'd on other grounds by* 355 F.3d 707 (3d Cir. 2004); *Holland v. Horn*, 150 F. Supp. 2d 706, 747 (E.D. Pa. 2001) (same); *Torrefranca v. Schriro*, No. Civ-05-2909, 2006 WL 1981788, at *10 n.5 (D. Ariz. July 13, 2006) (same).  Additionally, one court in this district has adopted the reasoning of the Sixth and Third Circuits.  *Green v. Johnson*, 2007 WL 951686, at *3 (E.D. Va. Mar. 26, 2007).

[29] *See Orbe v. True*, 233 F. Supp. 2d 749, 758 (E.D. Va. 2002).

[30] *See, e.g.*, *Fischetti*, 384 F.3d at 154-55 (holding that "AEDPA does not establish a statutory high hurdle for cause"); *Holloway*, 161 F. Supp. 2d at 476 n.12 (stating that "[c]ause and prejudice are merely an excuse to overcome a procedural default; they are not a claim in themselves").

the state courts as an independent claim before it may be used to establish cause for a procedural default." *Edwards*, 529 U.S. at 452.  Thus, because *Edwards* makes clear that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" that must have been presented to the state court, there is strong reason to believe that the state court's resolution of that ineffectiveness claim is subject to the same § 2254 principles as an ineffectiveness claim presented as a separate, substantive claim for habeas relief.  *See id.* at 451 (emphasis in original).[31]

In any event, whatever significance this dispute concerning the proper federal review standard may have in some close cases,[32] it is academic here given that Powell's ineffectiveness claim asserted as cause for default fails under both the *de novo* review standard and the § 2254(d) deferential standard.  In other words, whether review here is deferential or *de novo*, Powell's ineffectiveness claim fails and his defaulted claims cannot be considered.

## A.

Powell's first procedurally defaulted claim is based on the doctrine of collateral estoppel. He argues that even if his double jeopardy claim fails because he was not charged in his first trial with killing Stacey in the commission of, or subsequent to, attempting to rape her, the doctrine of

---

[31] Indeed, the Supreme Court's decision in *Edwards* rested on principles of comity and federalism in requiring a habeas petitioner to present an ineffectiveness claim as cause for default in state court.  *See id.* at 451 (citing *Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *Murray v. Carrier*, 477 U.S. 478, 490-92 (1986)).  Those same principles support applying § 2254's deferential review standard to the state court's resolution of an ineffectiveness claim asserted as an excuse for defaulting a claim.

[32] For example, the standard applied might affect the outcome of a case where a federal habeas court disagrees with the state court's resolution of an ineffectiveness claim under *Strickland*, but where the state court's analysis was not so unreasonable as to be an "unreasonable application" of federal law under § 2254(d).

collateral estoppel nonetheless barred relitigation of the *factual* issue of his attempted rape of Stacey.  Put differently, Powell contends that, even assuming his attempted rape of Stacey could not have been a basis for a capital murder conviction under Va. Code § 18.2-31(5) in his first trial, the prosecution's presentation of evidence on this matter during Powell's first trial precluded the relitigation of Powell's attempted rape of Stacey during the second trial.

The Supreme Court of Virginia found this claim procedurally barred during state habeas proceedings under *Slayton* because it had not been raised during trial or on direct appeal.  *Powell,* 2005 WL 2980756, at *4.  It rejected Powell's ineffectiveness claim as cause for the default on the ground that counsel's conduct failed to meet *Strickland*'s "prejudice" prong, namely that if Powell's counsel had raised the collateral estoppel argument on direct appeal, it would have affected the outcome of his case.  *See Powell*, 2005 WL 2980756, at * 5.

U.S. Supreme Court precedent makes clear that collateral estoppel applies "when an issue of ultimate fact has once been determined by a valid and final judgment."  *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).  If a court determines that "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration," then collateral estoppel does not bar the issue from being relitigated in a subsequent trial between the same parties.  *Id.* at 444 (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)).  These principles, applied here, compel the conclusion that Powell's counsel's performance was not deficient in failing to raise the collateral estoppel claim on direct appeal.  This is so because the jury could not have grounded Powell's capital murder conviction in his first trial on Powell's attempted rape of Stacey.  As noted in Part III *supra*, the bill of particulars limited the Commonwealth to proving the capital murder of Stacey based on the rape or attempted rape of

Kristie.  Hence, the question whether Powell attempted to rape Stacey could not have been, and was not, "necessarily decided . . . against the prosecution" as required for a collateral estoppel claim by *Ashe.  See Powell*, 590 S.E.2d at 551.

Yet, even assuming counsel's performance was deficient in this regard, the Supreme Court of Virginia correctly found that Powell cannot demonstrate prejudice from counsel's failure to raise the collateral estoppel claim on direct appeal.  This is so because counsel did raise, and the Supreme Court of Virginia rejected, a nearly identical "law of the case" argument on direct appeal.  *Id.* There, Powell alleged that the Commonwealth's Attorney argued in Powell's first trial that Powell "wanted something more" from Stacey and that it had evidence that Powell "was having sex or attempting to have sex with [Stacey]."  *Id.* at 550-51.  Powell argued on direct appeal that because the indictment and the jury instructions were silent as to the victim of the gradation crime, the jury must have considered and rejected the attempted rape of Stacey as a basis for a capital murder conviction.  *Id.* at 551.  Significantly, the Supreme Court of Virginia rejected this claim, applying *Ashe* — the same standard that applies to and dooms Powell's collateral estoppel claim.  *Id.*

Based on its rejection of Powell's "law of the case" claim on direct appeal, the Supreme Court of Virginia during Powell's state habeas proceedings found that Powell suffered no prejudice from counsel's failure to raise the collateral estoppel claim.  This finding was correct because Powell's "law of the case" claim on direct appeal was virtually identical to the collateral estoppel argument he made at the state habeas stage, both in terms of its factual basis and the applicable law necessary to resolve the claim; thus, even if counsel had raised the collateral estoppel claim at the same time as it raised the law of the case claim, the result would have been

the same for both claims.  It clearly follows that Powell's claim fails under either a *de novo* or a deferential standard of review.

## B.

Powell's next procedurally defaulted claim arises from his interrogation concerning the letter he wrote to the Commonwealth's Attorney while awaiting retrial after his successful appeal from the first conviction.  In addition to the non-defaulted Sixth Amendment claim discussed in Part VI *supra*, Powell claims his statements were involuntary because (i) Powell was taking Depakote and Atarax and (ii) the interrogator exceeded the promised scope of the questioning.  Powell argues these claims were defaulted in the Virginia habeas proceeding owing to his counsel's ineffectiveness in not challenging the use of these statements during his trial and appeal.

First, Powell contends that the Commonwealth violated his Fourth, Fifth, and Fourteenth Amendment rights by interrogating him while he was under the influence of Depakote and Atarax and that these drugs rendered his statements involuntary.  The Supreme Court of Virginia found this claim procedurally defaulted during state habeas proceedings and rejected the argument that counsel had been ineffective in failing to raise the claim earlier.  *Powell*, 2005 WL 2980756, at * 8.  It found neither deficient performance nor prejudice under *Strickland* because Powell "voluntarily and knowingly waived his *Miranda* rights."  *Id*.  It further held that Powell made no showing of the drugs' effects on his personality.  Rather, it found that the record demonstrated that Powell was "coherent and able to understand the questions [the detective] was asking."  *Id*.  In short, the Supreme Court of Virginia found that because there was no evidence that the drugs had any effect on Powell and because his statements otherwise appeared wholly

voluntary, there was no reason for counsel to object to the admission of his statements on the grounds of involuntariness.  *Id.*  Powell contends that this was an unreasonable application of *Strickland* and that the Supreme Court of Virginia's determination of the facts was unreasonable in light of the evidence presented.  *See* § 2254(d)(1) & (2).

To determine whether a statement was voluntary, a court must examine "whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of improper influence."  *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897) (internal punctuation omitted)).  Yet, "[t]he mere existence of threats, violence, implied promises, improper influence, or other coercive police activity . . . does not automatically render a confession involuntary."  *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997).  Rather, a court examining the voluntariness of a statement must look to the totality of the circumstances to determine "whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'"  *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).  Thus, where, as here, a defendant claims that certain drugs rendered a statement involuntary, a court must review the totality of the circumstances to determine whether those drugs caused the defendant's will to be "overborne" such that his statements were involuntary.

Here, the Supreme Court of Virginia correctly found that the totality of the circumstances showed that Powell's statements were voluntary.  *See* 2005 WL 2980756, at *8.  The record reflects that Powell never appeared to be confused during his conversation with the detective, nor did his will appear "overborne."  Rather, the totality of the circumstances show that Powell was

-47-

fully possessed of his faculties.  *See id.*  Because Powell's statement appeared wholly voluntary, counsel's performance in failing to object to its admission was not deficient.

Even assuming Powell could show his statements were involuntary and thus counsel's performance was deficient in this regard, Powell cannot show prejudice because his letter confessing to and detailing his attempted rape of Stacey would have been admissible notwithstanding the exclusion of Powell's statements.  This letter was not only authenticated by Powell during the detective's questioning, but also by a handwriting comparison.  J.A. at 745-50. Thus, even without the statements Powell made during questioning, the jury would have had an authenticated letter from Powell admitting to the attempted rape and murder of Stacey.  It follows that Powell was not prejudiced by the admission of his statements at trial.

In sum, Powell's ineffectiveness claim fails under either *de novo* or deferential review because he has not shown that his statements were involuntary and because he was not prejudiced by the admission of his statements at trial.

The same principles that foreclose Powell's claim that the drugs rendered his statements involuntary doom Powell's claim that his statements were involuntary because the detective exceeded the questioning's promised scope.  The detective told Powell that "the only promise that I made to you is that we're just going to discuss those letters relating to this rape.  We're not going to talk about the murder or anything else, okay." J.A. at 1082.  Notwithstanding this promise, the questioning eventually covered Stacey's murder and Powell's intent regarding the rest of Stacey's family.  Powell claims the detective broke his promise to discuss only the attempted rape and thereby rendered Powell's statements involuntary.

The Supreme Court of Virginia found this claim to be defaulted during state habeas

-48-

proceedings and rejected Powell's ineffectiveness claim as excuse for the default.  *Powell,* 2005 WL 2980756, at *8.  It found no deficient performance by counsel in failing to object to the statements' admission when the record indicated the statements were voluntarily and knowingly made, noting that Powell was told he could stop questioning at any time.  *Id.*  Moreover, when Powell signed the *Miranda* waiver form, he initialed that no promises had been made to him with respect to the ensuing interrogation.  *Id.*  At no point did Powell invoke his right to silence or to counsel, even after the detective questioned him on matters beyond the scope of the attempted rape.  *Id.*

A statement is not inadmissible simply because an investigator states that questioning will be limited to a certain topic and then later questions the defendant on additional topics.  *See Braxton*, 112 F.3d at 780.  Rather, the question whether a statement is involuntary and hence inadmissible because it is a "result of 'any direct or implied promises'"[33] depends on whether a review of the totality of the circumstances shows that "the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired.'"  *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973)).

Under either a *de novo* or deferential review standard, Powell's claim fails.  In the first place, the record does not reflect that the promise was broken so much as it reflects that Powell invited questioning about Stacey's murder by raising the topic himself.[34]  Powell also initialed on

_____

[33] *Hutto*, 429 U.S. at 30.

[34] Before the detective mentioned Stacey's murder, Powell told the detective that  "I could have killed her at any time.  She wasn't expecting it."  J.A. at 1085.  He also stated that he didn't tell the detective about his attempted rape of Stacey before his first trial because "I knew that I'd a got [sic] in more trouble if I said it and then I knew that she was dead."  *Id.*  After answering the detective's questions about the attempted rape, Powell said that "then I pulled my knife out

his *Miranda* waiver form that no promises had been made to him.  Nor did Powell request that the questioning cease once it went beyond the topic of the attempted rape.  In sum, there is simply no evidence that Powell's will was overborne by the detective's broken promise.  To the contrary, the totality of the circumstances show that Powell knowingly and voluntarily spoke with the detective.

Given this, counsel's performance was not deficient in choosing not to object to the admissibility of Powell's statements on voluntariness grounds.  Moreover, as already explained, Powell cannot demonstrate prejudice from the admission of his statements at trial, because Powell's letter confessing to the crime would have been admissible even without Powell's statements to police.  The Supreme Court of Virginia's application of *Strickland* in this regard was not only reasonable, but correct, and Powell's claim fails.

## C.

Powell next claims that the Commonwealth violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights by imposing unnecessary security measures on him, rendering him incapable of participating meaningfully in his trial.  Specifically, he claims that the Commonwealth treated him with an unusual and unnecessary combination of mood-altering drugs, including Depakote, Risperdal, Paxil, and Zoloft, at the same time, which made him appear "cold, expressionless, and remorseless during the trial."  Pet. at 32.  He was also forced to wear a stun belt during the trial for security reasons.  Powell does not allege that the jury saw the stun belt, but claims the belt effectively prevented him from meaningfully engaging with counsel

---

and you know, she looked at me you know.  I guess she thought I wouldn't stab her or whatever. So she tried to leave and go to answer the phone.  That's that."  *Id.* at 1089.

because he feared he would be stunned if he moved.  Powell claims that the drugs and stun belt affected the penalty phase of the trial, as at least two jurors stated in affidavits that they believed Powell had a "hard," "expressionless," "arrogant," "remorseless," and "cold" appearance during his trial.  H.A. at 2784-86.

The Supreme Court of Virginia found these claims procedurally defaulted during state habeas proceedings and rejected Powell's contention that ineffective assistance of counsel excused the default.  *Powell*, 2005 WL 2980756, at *13.  That court noted first that there is no evidence that any juror saw Powell wearing the stun belt.  *Id. Cf. Deck v. Missouri*, 544 U.S. 622 (2005) (holding that, "given their prejudicial effect, due process does not permit the use of *visible* restraints if the trial court has not taken account of the circumstances of the particular case") (emphasis added).  Nor, the court observed, did Powell allege that the drugs he received were involuntarily administered.  *Powell*, 2005 WL 2980756, at *13.  *Cf. Riggins v. Nevada*, 504 U.S. 127, 134 (1992) (holding that "forcing antipsychotic drugs on a convicted prisoner is impermissible absent a finding of overriding justification and a determination of medical appropriateness").

Powell cites no U.S. Supreme Court precedent holding that a defendant's constitutional rights are violated where he is medicated, pursuant to a physician's prescription, and where he never refused those prescribed medications.  Nor does Powell cite any U.S. Supreme Court case suggesting that a defendant subject to non-visible restraints is denied a constitutionally fair trial. There is simply no evidence that any juror saw Powell's stun belt, and Powell has never alleged that he was involuntarily or forcibly medicated.  Thus, Powell has not alleged any constitutional

error and his claim fails.[35]

## D.

Powell next claims that his due process right to a reliable sentencing hearing was violated by the admission, during the sentencing phase of his second trial, of an uncertified report of Powell's criminal history from the National Crime Information Center (NCIC) that contained factual errors and other inadmissible information.  The NCIC report incorrectly stated that Powell previously had been convicted of two counts of capital murder.  Thus, the NCIC report states that Powell had six felony convictions, when in fact he had only four.  The report also referenced a pending capital murder charge, presumably the charge for which Powell was standing trial.  Finally, the report contained factually correct entries that Powell alleges were inadmissible at

---

[35] Powell requests an evidentiary hearing for this claim and for the claim that the drugs he took during his questioning rendered his statements involuntary.  He believes the Supreme Court of Virginia put him in a "classic catch-22" by holding that Powell had not proved the drugs had any effect on him but denying him an evidentiary on this claim.  Response of Pet. at 22.

To receive an evidentiary hearing in a federal forum, a petitioner must show that, if proved, "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." § 2254(e)(2).  Importantly, where "the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Schriro v. Landrigan*, 127 S.Ct. 1933, 1940 (2007).

Here, Powell would not be entitled to relief even if he proved the underlying facts of his claim.  This is so because even if Powell could show his medications affected his behavior at trial, he has not shown he was involuntarily or forcibly medicated.  Similarly, even if Powell proved that Depakote and Atarax affected his behavior during his questioning, Powell was not prejudiced from the introduction of his statements into evidence.  Hence, Powell is not entitled to an evidentiary hearing on these claims.

trial, such as charges that were *nolle prossed*[36] or for which Powell was found not guilty.[37]   The

Supreme Court of Virginia found this claim defaulted under *Slayton*, and rejected Powell's

ineffective assistance of counsel claim as an excuse for the default.   *Powell*, 2005 WL 2980756,

at *3-*4, *14.

The Supreme Court of Virginia found, in its first opinion denying Powell's state habeas

petition, that one capital murder conviction entry listed on the report referenced Powell's first

conviction for the capital murder of Stacey, which was reversed on appeal.   *Id.* at *14.   On

Powell's petition for rehearing, the Supreme Court of Virginia found that the other incorrect

capital murder conviction entry referred to Powell's conviction for the *attempted* capital murder

of Kristie and that the report erroneously omitted the word "attempted."   *Powell*, 634 S.E.2d at

298.   Despite acknowledging these errors, the Supreme Court of Virginia initially found that

counsel's failure to object to the admission of the report constituted neither deficient

performance nor prejudice under *Strickland*.   *See Powell*, 2005 WL 2980756, at *14.   On

rehearing, however, the Supreme Court of Virginia found no ineffective assistance of counsel

under *Strickland* based solely on the fact that Powell had not demonstrated that he was

prejudiced by counsel's failure to object to the report's admission.   *See Powell*, 634 S.E.2d at

299.

---

[36] There are six entries for charges that were *nolle prossed*: contributing to the delinquency of a minor, unlawful entry, larceny, issuing a bad check, and two counts of statutory burglary.   Powell contends that the jury was not informed of the meaning of "*nolle prossed*," and that the jurors therefore would have thought these entries referred to convictions.

[37] There are five entries for crimes for which Powell was found not guilty: three counts of the use or display of a firearm in commission of a felony, an attempt to commit a noncapital offense, and robbery.   Importantly, each of these entries specifically noted that Powell had been found "not guilty" of these charges.

Under *Strickland*, a defendant who claims ineffective assistance of counsel as a basis for overturning a sentence of death must show that "absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.  Where, as in Virginia, unanimity is required for a death sentence, prejudice exists if "there is a reasonable probability that at least one juror would have struck a different balance."  *Wiggins*, 539 U.S. at 537.  Thus, even assuming counsel's performance was deficient in failing to object to the admission of the NCIC report, Powell must show a reasonable probability that at least one juror would not have imposed the death penalty had the report not been admitted.

In this regard, the Supreme Court of Virginia's *Strickland* analysis was not objectively unreasonable.[38]  The court first exhaustively listed the evidence presented to the jury that demonstrated Powell's future dangerousness:  (i) the heinous details of his crimes, (ii) his letters bragging to the Commonwealth's Attorney and taunting Stacey's mother, (iii) his letter to a friend stating that he had intended to "go to North Carolina and knock this dude off," (iv) his

---

[38] Powell argues unconvincingly that the Supreme Court of Virginia applied the wrong law, or applied *Strickland* unreasonably, because it stated that a petitioner seeking to prove prejudice under *Strickland* faced a "highly demanding" burden.  *Powell*, 634 S.E.2d at 296 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)).  Powell does not dispute that the U.S. Supreme Court in *Kimmelman* used the "highly demanding" language, but notes that it did so only in analyzing the deficient performance prong of *Strickland*.  Thus, Powell claims the Supreme Court of Virginia impermissibly inflated the prejudice prong of *Strickland* by applying *Kimmelman*'s "highly demanding" language out of context.  While the Supreme Court of Virginia did cite *Kimmelman*'s language in analyzing the prejudice prong, it also made clear that it was aware of and applied the proper standard, stating that "Powell has failed to demonstrate a *reasonable probability* that the result of the capital murder trial would have been different and hence he has not suffered prejudice as required by the highly demanding standard that the Supreme Court established in *Strickland*."  *Id.* at 297 (emphasis added).  In short, the Supreme Court of Virginia did not make the prejudice prong more demanding than it already was, but simply acknowledged that the standard was high and held that Powell had not met it.

letter to the Commonwealth's Attorney that he wanted to get out of prison to "kill . . . everybody else in this fucked up country that's not white," (v) his letter to a friend asking someone to threaten Kristie not to testify, and (vi) his admission to police that he wanted to "[k]ill a lot of somebodies . . . [j]ust for something to do." *See Powell*, 634 S.E.2d at 290-94.

The Supreme Court of Virginia then noted that the prosecutor relied little on Powell's criminal history in arguing future dangerousness.  The entirety of the prosecutor's use of the document bears quoting here:

> Your honor, as an initial matter, the Commonwealth would move for the introduction of the Certified Copy of the Defendant's prior criminal record consisting of two convictions in 1997 for contributing to the delinquency of a minor.  One conviction in 1999 for that same crime.  A petty larceny in 1998 and a grand larceny in 2001 along with the three felony convictions that is; rape, abduction with intent to defile and attempted capital murder involving Kristie.

*Id.* at 296.  Importantly, the prosecutor correctly summarized Powell's prior convictions, never suggesting Powell had been convicted of other capital murder charges.  *Id.* at 297.

After reviewing the aggravating evidence and the limited role the NCIC report played in the sentencing phase of Powell's trial, the Supreme Court of Virginia correctly noted that under *Strickland*, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  *Id.* at 298 (citing *Strickland*, 466 U.S. at 696).  It then concluded that, in light of the overwhelming aggravating evidence of Powell's violent tendencies, Powell had not shown that but for the admission of the NCIC report, at least one juror would have chosen not to impose a death sentence.  *Id.*  Even assuming that counsel's performance was deficient in failing to object to the report's admission, then, the Supreme Court of Virginia correctly concluded that Powell has not shown that this

deficiency affected the outcome of his sentence.[39]  Thus, under either a *de novo* or deferential

review, Powell's ineffectiveness claim in this regard fails.

      Contrary to Powell's argument, this result is not changed by the fact that the jury in

Powell's first trial did not find the future dangerousness factor proved beyond a reasonable

doubt.   Powell argues that the jury in his second trial must have been influenced by the NCIC

report, as it found the future dangerousness aggravating factor proved beyond a reasonable doubt,

whereas the  jury in his first trial did not receive the erroneous report and did not find that the

future dangerousness aggravating factor had been proved. This argument misses the mark, as the

question of future dangerousness in Virginia depends on the facts and circumstances of each

individual case.  It follows that Powell cannot use the outcome of his first trial as evidence of

prejudice in his second trial.  *See infra* Part VIII.E; *see also* Va. Code § 19.2-264.4(C).  Indeed,

the jury in Powell's second trial was provided with evidence not presented in his first trial, such

as Powell's letter to the Commonwealth's Attorney, from which it could have determined

Powell's future dangerousness.

      Also unpersuasive is Powell's claim that false evidence of a defendant's criminal history

---

[39] Powell's claim that the Supreme Court of Virginia's determination of this claim was contrary to *Tuggle v. Netherland*, 516 U.S. 10 (1995), fails for two reasons.  First, *Tuggle* applies in cases where an aggravating factor is invalidated.  *See Brown v. Sanders*, 546 U.S. 212, 218-19 (2006).  Here, the Supreme Court of Virginia did not invalidate the future dangerousness factor, but instead found the admission of the NCIC report had not prejudiced the jury's finding of future dangerousness because other, properly-admitted evidence overwhelmingly supported this finding.

      Second, Powell misstates the Supreme Court of Virginia's opinion.  Contrary to his argument, the Supreme Court of Virginia did not hold that Powell could not demonstrate prejudice because the jury had also found the vileness aggravating factor satisfied.  Rather, the Supreme Court of Virginia simply found that the vileness factor was not affected by the NCIC report.  *See Powell*, 634 S.E.2d at 298.

presented during sentencing is *per se* prejudicial.  First, as Powell acknowledges, the Supreme

Court has never set forth a bright-line rule holding inaccurate criminal history information

introduced during sentencing to be *per se* prejudicial.  To the contrary, *Strickland* requires a court

to review the facts of a particular case to determine whether counsel's deficient performance

prejudiced the defendant.  The *per se* rule of prejudice Powell advocates would not allow a court,

in accord with *Strickland*, to review the totality of the aggravating and mitigating circumstances

to determine whether the introduction of the false report was prejudicial.  Moreover, while

Powell cites cases in which inaccurate criminal history presented during sentencing was found to

be prejudicial, these cases are distinguishable because the prosecutor in those cases, unlike the

prosecutor in this case, explicitly relied on and referenced the inaccurate criminal convictions

when presenting aggravating evidence to the jury during sentencing.[40]

---

[40] *See Duest v. Singletary*, 967 F.2d 472, 474-75 (11th Cir. 1992), *vacated on other grounds by* 507 U.S. 1048 (1993) (noting that the prosecutor explicitly described convictions to the jury during sentencing that were later reversed); *Lewis v. Lane*, 832 F.2d 1446 (7th Cir. 1987) (finding prejudicial the admission of two inaccurate prior felony convictions where prosecutor explicitly relied on inaccuracies during sentencing and closing arguments).  Also inapposite, for the same reason, are those cases cited by Powell in which federal sentences were reversed because the sentencing judge explicitly relied upon false information.  *See, e.g.*, *United States v. Pugliese*, 805 F.2d 1117, 1124 (2d Cir. 1986).
Powell's reliance on *Johnson v. Mississippi*, 486 U.S. 578 (1988), is misplaced.  There, the Supreme Court held that a habeas petitioner's death sentence, which was predicated in part on the prosecution's express reliance on a felony conviction that was later invalidated, violated the Eighth Amendment.  It noted that "[e]ven without [the prosecutor's] express argument [about the prior conviction], there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* at 586 (quoting *Gardner v. Florida*, 430 U.S. 349, 359 (1977)).  Powell relies on this statement for the proposition that false criminal history presented at sentencing is *per se* prejudicial, regardless of whether the prosecutor relies on that false information explicitly.  This claim fails because *Johnson*'s statement that false information not explicitly relied upon during sentencing would have a "possibility" of prejudice is not sufficient to demonstrate prejudice under *Strickland*, which requires a petitioner seeking to demonstrate prejudice in sentencing to prove that "there is a *reasonable probability* that at least one juror would have struck a different

Powell next claims that the Supreme Court of Virginia's resolution of this issue was an unreasonable application of federal law because it reviewed the prejudicial effect of the two inaccurate entries in separate opinions, rather than "cumulatively."  In support of this claim, Powell relies on *Miller-El v. Dretke*, 545 U.S. 231 (2005), in which the Supreme Court granted habeas relief in favor of a petitioner who demonstrated discriminatory jury selection based on the prosecutor's use of peremptory strikes.  The Supreme Court noted that some of the prosecutor's actions might have non-discriminatory explanations, but that "when this evidence on the issues raised is viewed cumulatively its direction is too powerful to conclude anything but discrimination."  *Id.* at 265.

Powell's argument fails for two reasons.  First the Supreme Court in *Miller-El* was analyzing a discrimination claim and in no way suggested that a court applying *Strickland* must somehow cumulate errors when determining prejudice.  Hence, no U.S. Supreme Court case requires Powell's suggested analysis.  Powell's argument also fails because it is simply illogical — two errors, which separately do not prejudice a defendant, cannot be prejudicial simply because they are added together.  In other words, zero plus zero is still zero.

Finally, Powell has failed to demonstrate that the Supreme Court of Virginia reached an unreasonable determination of the facts in light of the evidence presented for purposes of § 2254(d)(2).  He argues first that it was unreasonable for the Supreme Court of Virginia to find that the jury knew that the entries on the NCIC report were false.  Furthermore, he claims the jury did not know that the inaccurate entries referred to (i) his conviction for the attempted capital

---

balance." *Wiggins*, 539 U.S. at 537 (emphasis added).  A "reasonable probability" is a higher standard than *Johnson*'s "possibility."  *Johnson* is also distinguishable because it is an Eighth Amendment case, not an ineffective assistance of counsel case.

murder of Kristie and (ii) Powell's vacated conviction for the capital murder of Stacey subsequent to the rape of Kristie.[41]

Powell's claim fails because it is reasonable to believe the jury understood Powell had not previously been convicted of the capital murder of two other victims in addition to Stacey.  First, the jury knew Powell's previous conviction of the capital murder of Stacey had been successfully appealed and vacated, based on Powell's letter to the Commonwealth's Attorney and on Powell's counsel's statements.   J.A. at 801-07, 813-14, 862.  The jury also heard detailed testimony about Powell's crimes against Kristie and knew that he was serving three life sentences for those crimes.  J.A. at 691-711, 813.  Additionally, in introducing the NCIC report, the Commonwealth's Attorney correctly stated that Powell had been convicted of the attempted capital murder of Kristie.   J.A. at 881.  Thus, it is reasonable to assume that the jury, upon seeing two entries for capital murder not mentioned by the prosecution, would understand that the NCIC entries were inaccurate and actually referred to the attempted capital murder of Kristie and the vacated conviction for the capital murder of Stacey.

---

[41] Powell also argues that the Supreme Court of Virginia's determination of fact was unreasonable in light of the evidence presented because, in each of its opinions denying Powell's petition for habeas relief, it only acknowledged one inaccurate entry for capital murder on the NCIC report, while ignoring the other.  This mischaracterizes the Supreme Court of Virginia's opinions.  The first habeas opinion acknowledged that the NCIC report contained multiple errors, but only discussed the prejudice to Powell of one erroneous capital murder conviction entry. *Powell*, 2005 WL 2980756, at *14.  Then, in its second habeas opinion, the Supreme Court of Virginia addressed the prejudice stemming from the second capital murder conviction entry.  Thus, the Supreme Court of Virginia specifically discussed and analyzed each of the two false entries for capital murder convictions on the NCIC report, but did not discuss the prejudice from the pending capital murder charge, the *nolle prossed* charges, or the charges for which Powell was not found guilty.  Contrary to Powell's argument, however, the Supreme Court of Virginia did not specifically find that there were only two errors in the NCIC report.  Hence, contrary to Powell's argument, the Supreme Court of Virginia's factual determination was not unreasonable.

In sum, the Supreme Court of Virginia correctly found that Powell failed to demonstrate prejudice from the admission of the NCIC report.  Nor did the Supreme Court of Virginia make an unreasonable determination of the facts under § 2254.  Thus, under either a *de novo* or a deferential standard of review, Powell's claim for habeas relief on this ground fails.[42]

## E.

Powell next makes several claims for habeas relief based on the vileness and future dangerousness aggravating factors found by the jury.  The first of these claims is that his Fifth, Sixth, and Fourteenth Amendment rights were violated because the indictment did not list the vileness and future dangerousness aggravating factors, which were the bases for the jury's death sentence.  The Supreme Court of Virginia found no ineffective assistance of counsel under *Strickland* because "[t]here is no constitutional requirement that a capital murder indictment include allegations concerning aggravating factors."  *Powell*, 2005 WL 2980756, at *10 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000)); *see also Morrisette v. Warden of Sussex I State Prison*, 613 S.E.2d 551, 556 (Va. 2005).  Thus, the Supreme Court of Virginia found trial counsel was not ineffective for failing to raise the issue.

The Supreme Court of Virginia's resolution of this issue was not an unreasonable application of *Strickland*, given, as it correctly noted, that no U.S. Supreme Court precedent

---

[42] Powell also baldly asserts, with no supporting detail, three additional claims stemming from the admission of the NCIC report: an Eighth Amendment claim, a Fourteenth Amendment claim, and a "Napue" claim.  Although Powell does not name the full case or cite it, "Napue" likely refers to *Napue v. Illinois*, 360 U.S. 264 (1959), which held that a conviction obtained through the use of false testimony, known to be such by representatives of the state, is a denial of due process.  But, as Powell mentions these three claims in one sentence in his reply to the Commonwealth's motion to dismiss his habeas petition and does not describe them, they are appropriately dismissed.

requires aggravating factors to be alleged in an indictment.  Rather, the U.S. Supreme Court

requires only that such factors must be found by a jury.  *See Blakely v. Washington*, 542 U.S.

296, 301-02 (2004); *Ring v. Arizona*, 536 U.S. 584, 589 (2002).  Powell's sentence complied

with this precedent.  Thus, Powell's claim for habeas relief on the ground that the aggravating

factors were required to be listed in the indictment is without merit, as a federal court can only

grant habeas relief on the basis of violations of "clearly established Federal law, as determined by

the Supreme Court of the United States."  *See* § 2254(d)(1).

  Next, Powell claims that the doctrine of collateral estoppel barred relitigation of his future

dangerousness in his second trial, as the jury in his first trial had considered and rejected this

aggravating factor.  The Supreme Court of Virginia found this claim procedurally defaulted

during state habeas proceedings and rejected Powell's ineffective assistance of counsel claim as

excuse for the default.  *Powell*, 2005 WL 2980756, at *11.  In this respect, the Supreme Court of

Virginia noted that future dangerousness of an individual, under Virginia law, "may be based

solely on 'the circumstances surrounding the commission of the offense of which he is accused.'"

*Id.* (citing Va. Code § 19.2-264.4(C); *Murphy v. Commonwealth*, 431 S.E.2d 48, 53 (Va. 1993)).

It then found Powell's collateral estoppel claim without merit because Powell was charged with a

crime in his second trial that was different from the crime charged in his first trial.  *Id.*  In short,

the Supreme Court of Virginia held that future dangerousness is offense-specific.  Because

Powell's future dangerousness with respect to the particular charge in his second trial had not

previously been litigated, the Supreme Court of Virginia found that counsel's performance was

not deficient and that Powell had not shown a reasonable probability that, "but for counsel's

alleged errors, the result of the proceeding would have been different."  *Powell*, 2005 WL

2980756, at *11.  This application of *Strickland* was not merely reasonable, it was correct.

Because Powell's two trials were for different crimes, he was not insulated from a jury

considering his future dangerousness in his second trial simply because he had been previously

tried for a different capital murder offense for which the jury had considered Powell's future

dangerousness.

Next, Powell contends that his Fifth, Eighth, and Fourteenth Amendment rights were

violated by a vague jury instruction on the vileness aggravating factor.  The trial court instructed

the jury that to find vileness, it must find Powell's "conduct in committing the offense was

outrageously or willfully vile, horrible, or inhumane, and that it involved torture, depravity of

mind or aggravated battery to the victim beyond the minimum necessary to accomplish the act of

murder." J.A. at 1018.  Powell claims this instruction, without a limiting instruction, was

unconstitutionally vague.[43]   On direct appeal from the second conviction, the Supreme Court of

Virginia found that Powell had waived this claim by failing to brief it adequately.  *Powell*, 590

S.E.2d at 554.  Powell then alleged during state habeas proceedings that counsel was ineffective

for failing to raise this issue at trial.  The Supreme Court of Virginia reasonably rejected this

argument, as counsel did object to the vileness instruction at trial.  *See Powell,* 2005 WL

2980756, at *11.  Moreover, even if Powell had properly preserved this claim during state

proceedings, it would fail on the merits during federal habeas review, as the Fourth Circuit has

repeatedly rejected vagueness challenges to the precise jury instruction used by the trial court

---

[43] *See Smith v. Commonwealth*, 248 S.E.2d 135, 149 (Va. 1978) (noting that "it is conceivable that the language defining the [vileness] aggravating circumstance could be tortured to mean that proof of an intentional killing is all the proof necessary to establish that circumstance").

here.  *See, e.g., Tuggle v. Thompson*, 57 F.3d 1356, 1372 (4th Cir. 1995), *rev'd on other grounds*,

516 U.S. 10 (1995); *Barnabei v. Angelone*, 214 F.3d 463, 472 (4th Cir. 2000), *abrogated on

other grounds by Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000).

       Powell's next claim is that the trial court's instruction to the jury on the future

dangerousness factor was vague and contradictory.  In this respect, the trial court instructed the

jury that it must find beyond a reasonable doubt that "after consideration of [Powell's] history

and background there is a probability that he would commit criminal acts of violence that would

constitute a continuing serious threat to society."  *Powell*, 2005 WL 2980756, at *11.  He claims

that "beyond a reasonable doubt" contradicts "probability" such that a reasonable juror could not

determine the proper standard to apply when considering Powell's future dangerousness.

       The Supreme Court of Virginia found this claim defaulted and rejected Powell's

ineffectiveness claim as excuse for the default.  *Id.*  It held that counsel was not deficient for

failing to object to this jury instruction, as the Supreme Court of Virginia had previously rejected

an identical challenge to this jury instruction in a different case.  *Id.* (citing *Mickens v.

Commonwealth*, 442 S.E.2d 678, 684 (Va. 1994)).[44]  Moreover, because the Supreme Court of

Virginia would have followed its own precedent in rejecting this claim even if counsel had raised

it, Powell cannot show he was prejudiced by the failure to raise this issue. It follows that Powell

cannot show that counsel was ineffective under *Strickland* or that the Supreme Court of Virginia

unreasonably applied either prong of *Strickland* in adjudicating this claim.

---

       [44] Notably, the Fourth Circuit also has repeatedly rejected challenges to the future
dangerousness statute.  *See Spencer v. Murray*, 5 F.3d 758, 764-65 (4th Cir. 1993).

**F.**

Finally, Powell claims that Virginia's procedures for post-conviction review violated his due process rights by: (i) limiting capital habeas petitioners to fifty-page petitions; (ii) refusing to appoint Powell certain requested experts to develop his claims; and (iii) determining certain facts without first holding evidentiary hearings.  Only the second of these claims was raised in state court, so the remaining two claims are barred from federal habeas review.  *See Gray v. Netherland*, 518 U.S. 152, 162 (1996).[45]

Even if they were not defaulted, these claims, as well as Powell's claim that the failure to appoint experts rendered Virginia habeas procedure constitutionally infirm, would fail because "a challenge to Virginia's state habeas corpus proceedings cannot provide a basis for federal habeas relief."  *Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) (citing *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988)).[46]  This is so because a "federal court 'shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wright*, 151 F.3d at 159 (citing 28 U.S.C. § 2254(a)).  Thus, a

---

[45] These claims are simultaneously exhausted and defaulted.  They are exhausted because Powell could not bring a successive state habeas petition on these claims.  *See* Va. Code § 8.01-654.1.  *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  They are also defaulted because a state "procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default."  *See Gray*, 518 U.S. at 162 (citing *Teague v. Lane,* 489 U.S. 288, 298 (1989)).  Powell offers no such "cause and prejudice" for his defaulted claims, so a federal habeas court may not review them.

[46] *See also Barner v. Warden, Buckingham Correctional Center*, 37 F.3d 1492 (4th Cir. 1994); *Bell v. True*, 413 F. Supp. 2d 657, 735 (W.D. Va. 2006); *Orbe v. True*, 233 F. Supp. 749, 787 (E.D. Va. 2002).

challenge to procedures employed by a state habeas court is not cognizable on federal habeas review, because the petitioner is not "'detained as a result of a decision of the Virginia Supreme Court in the state habeas action,' but rather is in custody pursuant to the ruling of the original trial court." *Orbe*, 233 F. Supp. 2d at 787.

Accordingly, Powell's challenges to Virginia's post-conviction procedures must fail.

### Conclusion

For the reasons stated above, Powell's petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, must be dismissed.  Accordingly, the stay of execution entered by Order dated July 6, 2007, must be vacated.

An appropriate Order will issue.

/s/<br>
T. S. Ellis, III<br>
United States District Judge

Alexandria, Virginia<br>
January 11, 2008

-65-